**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DAVID CHU | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-00574-RCL |
| | ) | |
| MAGIC LEAP, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT MAGIC LEAP, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendant Magic Leap, Inc. ("Magic Leap" or "Defendant") is a technology company implementing augmented reality solutions. Plaintiff David Chu ("Chu" or "Plaintiff") is a former Vice President of Magic Leap, employed from August 2021 to Spring 2023. Ex. B, David Chu Depo. Tr., at 44:6-13, 43:11-15, 75:21-76:7. Chu was hired with a $300,000 base salary and a $1,200,000 bonus structure for his first year of employment. Ex. A, Chu Employment Agreement. No bonus plan was agreed to upon hire for continuation of this generous bonus structure for the second year of his employment. To accommodate this "compensation cliff" in his second year of employment, Chu requested a retention bonus plan for 2023. Chu's retention bonus structure, however, was never finalized. Specific performance milestones were never finalized, the compensatory structure of his retention bonus was never approved by the Board of Directors, and no written agreement was created for Chu's signature, memorializing any supposed agreement. As an employee in senior leadership at Magic Leap who has dealt with the compensation approval process for his direct reports, Chu knew or should have known that any retention bonus plan akin to his required the approval of the Board of Directors and needed to be

4

outlined in a formal, Docusigned agreement. No such Board approval or written, signed agreement was ever obtained in accordance with Magic Leap practice, procedure, and policy.

Despite these undisputed facts, Chu brings this suit for an alleged violation of the Virginia Wage Payment Act ("VWPA") and breach of contract based on a proposed framework for a retention bonus plan, which was never finalized or approved by the Board. Both of Chu's claims must fail because the undisputed material facts demonstrate that no final agreement was reached between him and Magic Leap and because he knew or should have known that all such proposed bonus plans required the approval of the Board of Directors.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### a. Chu's Employment Agreement with Magic Leap

1. Chu's employment agreement states: "You will be eligible to participate in a bonus plan that the Board of Directors of the Company may adopt for employees of the Company." Ex. A at 2.

2. Chu's employment agreement states: "The amount of any performance bonus to be paid to you is at the sole discretion of the Company, and you must be a full-time employee of the Company in good standing at the time any such performance bonus is to be paid to you." Ex. A at 2.

3. Chu's employment agreement states: "the Company reserves the right to modify compensation from time to time as it deems necessary." Ex. A at 1.

4. Chu's first year compensation, including his first-year bonus structure, was memorialized into a written agreement, which was signed by Magic Leap and Chu. Ex. A; Ex. B. at 82:4-83:7.

331729026v.5

5.      This agreement was the only compensation agreement that Chu received, which was memorialized into a written agreement and signed by Magic Leap and Chu. Ex. A.

### b. Magic Leap's Policies, Practices, and Procedure as to Compensation

6.      It was Magic Leap's policy, practice, and procedure to discuss a proposed compensation plan with the employee before seeking approval from the Board of Directors and signing an amendment to the employee's employment agreement. Ex. C, Victoria Stewart Depo. Tr., at 75:1-76:11, 65:20-67:3; Ex. D, Magic Leap Corp. Rep. (McCree Lake) Depo. Tr., at 21:6-22:20 (Q. Okay. So what does the CEO's approval mean at that – what did the CEO's approval mean at that point regarding this proposal? A. Per our process, the approval would of [sic] allowed us to move forward with either working with employment counsel internally or outside counsel to create a more detailed and structured agreement that would have needed to be then further approved and signed. Q. Okay. All right. And then at that point – at what point would the proposal be, I guess, submitted to the employer, whoever it is that would need to look at the proposal? A. Yeah. So the process would be, for any type of bonus plan like this one, once the CEO had approved like this, we would work with counsel, either, you know, our internal employment counsel or outside counsel, to take the business context that you see in this email. Such as the specific milestones, technicalities about, you know, the timeline associated with them, how they're evaluated. Those would be iterated on and discussed. An agreement would be created, a formal document that would then be shared back with the employee for additional review and feedback. And ultimately, once everyone was aligned, that would be memorialized through, typically, a Docusign where both the employee would sign either as an amendment to their employment agreement or some other, you know, enforceable agreement, and then a

representative of the company would sign as well. Typically the CFO or the CEO."), 32:11-33:1; Ex. E, Sheri Bernal Depo. Tr., at 29:5-30:3.

7.       It is Magic Leap's policy, procedure, and practice to prepare detailed performance milestones before retention bonus plans could be sent for approval by the Board of Directors. Ex. C at 52:17-53:18; Ex. D at 49:5-17.

8.       It is Magic Leap's policy, procedure, and practice to memorialize with detail into a written agreement any proposals discussed with an employee, which is Docusigned by the employee and either the CEO or CFO. Ex. F, Jose Baltazar Depo. Tr., at 112:4-113:12; Ex. D at 21:6-22:20.

9.       Julie Larson-Green did not have authority to bind Magic Leap with regard to employee bonus compensation. Ex. D at 212:16-22; Ex. F at 110:14-16.

10.       Jose Baltazar did not have authority to bind Magic Leap with regard to employee bonus compensation. Ex. D at 176:21-177:8; Ex. F at 110:11-13.

11.       All proposed bonuses, including Chu's proposed bonus, were contingent upon approval from multiple individuals and ultimately the Board of Directors. Ex. F. at 113:6-12; Ex. B at 64:1-11 ("Q. But there was an entire department that, essentially, made the determination as to, yes, this would—we approve this bonus, we don't approve this bonus? A. For the run-of-the-mill cases, yes. Q. So when they're coming on board, this department has to make that determination, and then it gets memorialized in the group that you supervised offer letters, or whatever the written documents is? A. I think so. I think so.").

### c.   Communications Regarding Chu's Proposed Bonus Framework

12.       On October 20, 2022, Jose Baltazar emailed Magic Leap CEO Peggy Johnson and Magic Leap CFO John Doherty: "Please see below what Julie and I agreed on for David Chu.

7

Julie (cc'd) is deciding on when they in effect [sic] as it might be Q1 2023 but TBD for now. We will also tie specific milestones to it. @Peggy Johnson please provide your approval and we will proceed accordingly." Ex. G, October 20, 2022, Emails, at DEF_000122.

13.    On October 20, 2022, Johnson responded to the email from Baltazar with "Approved." Ex. G at DEF_000122-123.

14.    On December 2, 2022, Chu emailed Larson-Green regarding a potential framework for performance milestones: "Let me know what you think QN. Ship improved hand tracking QN+1. Q3. Ship AT Cloud Dense Map Merge for Digital Twins QN+2. Ship Omniverse Private Beta QN+3. Ship new cloud perception capabilities." Ex. H, ECF 1-5, at 1.

15.    Later on December 2, 2022, Larson-Green responded to Chu: "Looks good to me! Here's what Vicky sent me. Let me know what you think." Ex. H at 1. This email also contained a proposed framework for the compensatory portion of Chu's proposed retention bonus plan. Ex. H at 1.

16.    Chu responded to Larson-Green's proposed compensatory framework, rejecting the framework: "Thanks for sharing. To be honest, it's pretty far from expectations…." Ex. H at 1-2.

17.    On December 8, 2022, Baltazar emailed Larson-Green and Victoria Stewart: "Hi Julie and Victoria, I am talking to David next week, are we aligned on the latest proposal from Vicky?" Ex. I, December 8, 2022 Emails, at DEF_000210.

18.    Larson-Green was carbon copied on a December 8, 2022 email from Victoria Stewart to Jose Baltazar which stated Chu's bonus compensation "would be funded through the 2023-24 retention budget." Ex. I at DEF_000210-211.

19.     On December 16, 2022, Stewart emailed Chu regarding a revised proposed framework for the compensatory portion of his proposed retention bonus plan: "David, We are circling back with a retention plan that provides quarterly payments over the next two years (2023 – 2024). The plan is designed for more in Year 1 vs. Year 2 and will have key milestones, as defined by Julie, associated with the payouts. Please take a moment to review the attached (password will be sent separately) and provide us with your feedback and/or any questions you might have." Ex. J, December 16, 2022 Emails, ECF 1-6 at 1.

20.     Chu responded to Stewart's revised proposed framework on December 16, 2022: "Thank you for providing the details here, and for investing in me. Let's do it." At this point, no milestones had been specified by Larson-Green. Ex. J, ECF 1-6 at 1.

21.     Larson-Green replied to Chu's email on December 16, 2022: "Happy to hear that! Looking forward to all we can accomplish together in 2023!" Ex. J, ECF 1-6 at 1.

22.     On January 21, 2023, Stewart emails Green: "Julie, As a reminder, we had agreed to a $600k retention for David Chu (attached) to which you were going to assign specific milestones. My assumption is that it is being funded through the approved Retention Plan we are working on but will defer to Jose to weigh in to confirm if we have separate funding for this one. I just want this to be brought back to the surface as I don't believe this has been initiated pending the defined milestones." Ex. K, January 21, 2023 Email, at DEF_000132.

23.     On April 11, 2023, Shirley Zaja emailed Sheri Bernal and Stewart: "Jose did present a retention plan for David in December that we worked with Julie on that landed at $600k (see below) but then it was placed on hold to be included/funded by the new Retention Pr. There has not been a retention agreement executed at this time for us to proceed with any

9

payment given the Retention Program was placed on hold." Ex. L, April 2023 Emails, at DEF_000102.

24.    April 25, 2023 email from Sheri Bernal to Larson-Green: "I will go back and look at what you shared in writing. I understood that this was not his sign on commitment (that was paid in full thankfully) but the same retention promise made to others with the understanding that 'we were working on retention for them.' In this case we gave him an option of what that would look like via email but no formal offer or signed documents as we had done in practice before or do today. The only reason I cannot offer him the bonus is because we do not have bonus dollars from the PIF. It was not approved by them and I was told flat out: no." Ex. L at DEF_000157.

25.    On April 25, 2023, Bernal emailed Stewart a summary of her call with Chu: "(1) David Chu – Spoke to him openly that we had approval on design, not on funding – Largest investor asked us to hold off until after JA – We are all not keen to do this but need to continue to watch market tells just like with bonus – can't honestly say we'll get the money then but we are also exploring other options with equity, etc – will share more as I have it, you and I will stay connected – let us know if gets to point needs to find another job so we can try to do something – he wants a 4-way meeting with you, me, Julie next week to get everyone on the same page May go south after he speaks with family tonight but he thanked me for honesty / transparency and seemed very rational. We even laughed during parts of conversation." Ex. L at DEF_000126.

26.    Baltazar told Chu that his retention bonus plan had to be approved by the Board of Directors. Ex. F, Baltazar Depo. Tr., at 109:10-110:10 ("Q. Mr. Baltazar, did you ever tell Mr. Chu that his compensation plan had to be approved by the shareholders? A. From what I recall, I believe so. Q. And was that a phone call conversation or an email? A. I think it was a verbal conversation when we had the discussion on the exhibit that was shown earlier on the December

10

one. Q. And independent of any conversation that you had with Mr. Chu, should he have known that all compensation plans had to be approved by the shareholders? A. Yes. Q. Why should he have known that? A. Everyone in the leadership knew that everything had to be approved by the shareholders regarding compensation. Q. And as – I believe Mr. Chu was a vice president of the engineering or some engineering division, he was considered leadership that should have known about this? A. That's correct.").

### d.  Chu's Proposed Retention Bonus Plan

27.        Chu's proposed retention bonus plan was never approved by Magic Leap or the Board of Directors or memorialized into a written, signed agreement. Ex. M, March 2023 Emails, at DEF_000121 ("he needs to understand that his retention is part of the broader Retention Plan that is still pending final sign off. We hope to have a better answer for you after tomorrow's meeting with the BoD/Comp Committee but we haven't received the okay to proceed forward with generating the employee agreements/notifications as of yet. Once approved, he will receive the full amount of what we discussed with him but the timing might be off slightly. Will keep you posted."), Ex. D at 178:12-179:3 ("[T]here was alignment and discussion about proposed retention and milestone bonus payment, but there was never any formalization of that agreement in a way that it was documented, accrued, entered into any finance or payroll system, entered into any HRAS system. So our knowledge of this and our contention is that while there was alignment clearly from all of the discussion, there was never any formalization, and everyone on the thread and Mr. Chu would have known that had to be formalized in order to be paid.").

28.        Magic Leap and Chu did not set forth any proposal as to steps to attain quarterly milestones. Ex. B at 148:8-152:5; Ex. D at 49:8-17 ("[B]ased on my reading, the—the general

11

framework of the milestones would have been agreed upon, but consistent with our practices, and all of these leaders would have known that additional details are needed. And that's visible from the perspective that Julie's even saying she doesn't have a way to track them, and that Vicky is noting that we haven't initiated additional activities to formalize it.").

29.    Chu never signed any agreement memorializing his final retention bonus plan. Ex. B at 111:19-112:20.

30.    Chu's proposed bonus retention plan was never finalized in order to be sent to the Board of Directors for approval. Ex. C at 51:1-16 ("A. Well, based on this email stream, this was something that was being proposed. It was the framework of what a retention plan might look like. And we were seeking feedback in order to be able to go to the next steps with finalizing the plan. Q. All right. Does it mention anything about going to the next steps or any next steps referring to that in this email chain? A. 'Please take a moment to review the attached and provide us with your feedback and/or any questions you might have.' So this wasn't – at this point in this email stream, it was something that was being presented for consideration but it wasn't anything that was final."), 52:17-53:3 ("A. But I do know that we were specifically looking for milestones to be detailed out before anything could be taken to the next step. Q. Understood. All right. A. Just because David is okay with the framework and Julie is like, I'm glad to hear that, that doesn't mean it's done until we finalize all the details of the retention plan and get final approval to document the Docusign."); Ex. F at 111:20-3.

## III. ARGUMENT

For the reasons that follow, the undisputed material facts demonstrate that Magic Leap is entitled, as a matter of law, to the entry of summary judgment in its favor as to all counts of the Complaint.

### A.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court is permitted to grant summary judgment when, considering the pleadings and discovery on file in the case, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." According to the United States Supreme Court, a disputed fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby*, 447 U.S. 242, 248 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party carries its initial burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 325 *accord Haynes v. Williams*, 392 F.3d 478, 485 (D.C. Cir. 2004); *Simpson v. WMATA*, 688 F. Supp. 765, 768 (D.D.C. 1988). Chu may not argue contrary to the factual allegations of his complaint, as those allegations are conclusively binding judicial admission. *Watson v. Gold N Diamonds, Inc.*, 736 F.Supp.2d 266, 270 (D.D.C. 2010); *see also Jackson v. Marion Cnty.*, 66 F.3d 151, 153-54 (7th Cir. 1995).

### B.  Chu's Breach of Contract Claim Must Fail Because no Final Agreement Existed

Chu's breach of contract claim fails, as a matter of law, because no final agreement existed between Magic Leap and Chu regarding his 2023 retention bonus plan. While Magic Leap acknowledges that a proposed framework for a retention plan was presented to Chu, it was never formalized, approved by the Board of Directors, or executed into a formal amendment to Chu's employment agreement. Magic Leap CEO Peggy Johnson approved the proposed framework for a bonus plan on October 20, 2022, as an approval of the concept, not a final approval of Chu's bonus plan. Ex. G at DEF_000122. At the time Johnson approved the bonus plan concept for Chu, no specific milestones were tied to the bonus plan, no Board approval was

13

obtained, and no written agreement was signed. Moreover, a revised proposed bonus plan was internally discussed and presented to Chu on December 8, 2022. Ex. I. All communications with Larson-Green, Johnson, and Baltazar were pre-negotiations used to nail down the framework for the potential bonus plan prior to it being presented to the Board of Directors for approval and subject to reduction in writing.

Chu claims that a final agreement was reached between him and his supervisor Julie Larson-Green on December 16, 2022, after he was presented this revised proposed bonus plan. However, no specific milestones had been tied to that proposed framework by that time. Further, as a Magic Leap employee in senior leadership, Chu knew or should have known that all significant bonus plans required the approval of the Board of Directors and needed to be memorialized in a written amendment to his employment agreement, to be signed by the company and countersigned by Chu. No such Board of Directors approval was obtained and no written agreement was signed.

As no final agreement as to Chu's retention bonus plan was reached, Chu's breach of contract claim cannot stand.

### C. Chu's VWPA Claim Must Fail Because Chu's Bonus was Discretionary

Count I of Chu's Complaint claims violation of the VWPA, which provides that all wages owed an employee are due upon termination of employment. Any employer who fails to make payment of wages in accordance with this statute shall be liable for payment of all wages due. Va. Code § 40.1-29.

Chu's VWPA claim must fail because Chu's proposed retention bonus was discretionary. Pursuant to the Virginia Department of Labor and Industries ("DOLI") regulations, discretionary bonuses are not considered wages and thus cannot be collected via a VWPA claim. Va. Code §

14

40.1- 29. Under these regulations, a discretionary bonus is defined as any benefit, which is not required to be given under the employment contract, and which may therefore be given or withheld at the employer's discretion and does not include any compensation which the employee was reasonably led to believe the employer was obligated to pay him upon completion of work performed. VA Dept. of Labor & Industry, Division of Labor and Employment Law, Field Operations Manual, Ch. 10, § 9.00(A).

A discretionary bonus has the following characteristics applicable to this case: (1) the employer retains discretion with respect to the fact of payment without prior promise or agreement; and (2) the employer retains discretion with regard to the sum, if any, to be paid without prior promise or agreement. *Id.* According to these guidelines, Chu's proposed retention bonus was discretionary because: (1) as described above, no final agreement existed memorializing all aspects of Chu's retention bonus plan; (2) no final agreement was signed by Magic Leap or Chu; (3) no final agreement was approved by Magic Leap's Board of Directors, whose approval was known as required to memorialize any bonus; (4) only the proposed terms of Chu's retention bonus plan were discussed; and (5) Chu's employment agreement specifies that all compensation and bonuses are subject to Magic Leap's sole discretion.

31.    As described above, it was Magic Leap's policy and practice for retention bonuses that there be a signed amendment to an employee's offer following approval by the Board of Directors. . Ex. F at 112:4-113:12; Ex. D at 21:6-22:20; Ex. B at 64:1-11. That did not occur in Chu's case.

Further, Chu's employment agreement specifically states that: (1) "You will be eligible to participate in a bonus plan that the Board of Directors of the Company may adopt for employees of the Company"; (2) "The amount of any performance bonus to be paid to you is at the sole

15

331729026v.5

discretion of the Company, and you must be a full-time employee of the Company in good standing at the time any such performance bonus is to be paid to you"; and (3) "[T]he Company reserves the right to modify compensation from time to time as it deems necessary." Ex. A.

While Magic Leap acknowledges that a framework for a proposed bonus plan was presented to Chu, it was never formalized or executed into a formal amendment to Chu's employment agreement, nor was it ever approved by the Board of Directors.

### D. Chu's Claim for Treble Damages Must Fail Because There was a Bona Fide Dispute

In support of his claim for treble damages, Chu cites to Va. Code § 40.1-29(J), which provides that: "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Since the statute "delineates between knowing and unknowing conduct, the Court must analyze each wrongful withholding and make findings regarding the employer's state of mind." *Muratore v. Foster Aesthetics, L.L.C.*, 113 Va. Cir. 414, 427 (Chesapeake 2024) ("the statute avails greater liability if the employer knew or intentionally withheld wages").

Va. Code § 40.1-29(K) states that "a person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information." Withholdings that are "the subject of a *bona fide* dispute" are not knowing. *Muratore*, 113 Va. Cir. at 427 ("The Court finds that the employer's argument on the issue was plausible, albeit, a breach of contract, but not a knowing disregard of that truth."); *see, e.g.*, Va. Code § 40.1-29(E) (An employer who "refused to pay wages [is guilty of a crime] . . . unless the failure to pay was because of a bona fide dispute between the employer and its employee."); *see also Racklin v.*

16

*Zeta Global Corp.*, 628 F. Supp. 3d 625, 647 (E.D. Va. 2022) (plaintiff's "VWPA claim fails because the statute only covers earned wages, and does not apply if the failure to pay was because of a bona fide dispute between the employer and its employee") (internal quotations and citations omitted); *see also Davenport v. HirePower Pers., Inc.*, No. 5:22-cv-074, 2024 U.S. Dist. LEXIS 71873, at *30 (W.D. Va. Apr. 19, 2024) ("a cause of action does not exist where pay was not withheld or where the alleged failure to pay was because of a bona fide dispute between the employer and its employee"). The delineation between knowing and unknowing conduct on the part of the employer is important because the "purpose of [the VWPA] is to protect employees from bad acting employers." *Nestler v. Scarabelli*, 77 Va. App. 440, 466 (2023). Therefore, treble damages are only available upon a specific finding of knowing withholding of wages.

Chu's treble damages claim must fail because the "knowing" standard is not met as there was a bona fide dispute between Magic Leap and Chu as to what, if anything, was owed to him. *See Davenport*, 2024 U.S. Dist. LEXIS 71873, at *30-31 ("even construing [defendant's] subsequent refusal to provide [plaintiff] the backpay he demanded in 2022 as withholding earned wages under the VWPA, such withholding was the result of a bona fide dispute between the employer and employee. . . . Accordingly, the appropriate vehicle for Davenport to seek redress is his breach of contract claim") (internal quotation omitted); *see also Muratore*, 113 Va. Cir at 427.

## IV. CONCLUSION

For the foregoing reasons, and those that will be urged upon the Court in a subsequent reply brief and at oral argument, if any, Defendant Magic Leap, Inc. respectfully requests that the Court grant its motion and enter summary judgment in its favor as to all counts.

331729026v.5

Dated: March 23, 2026

Respectfully Submitted,

**MAGIC LEAP, INC.**
By Counsel


 /s/ Christina Heischmidt
Christina M. Heischmidt (DC Bar No. 1006759)
Giovanna R. Bonafede (DC Bar No. 90011443)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive - Suite 510
McLean, Virginia 22102
(703) 245-9300 (phone)
(703) 245-9301 (fax)
Christina.Heischmidt@wilsonelser.com
Giovanna.Bonafede@wilsonelser.com
*Counsel for Defendant Magic Leap, Inc.*

18

331729026v.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2026, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will then send a notification of such filing to the following:

Jeremy C. Huang
ROWE WEINSTEIN & SOHN, PLLC
909 Rose Ave., Suite 640
N. Bethesda, MD 20852
(301) 770-4710 (phone)
(301) 770-4711 (fax)
jhuang@rowepllc.com
*Counsel for Plaintiff David Chu*

*/s/ Christina Heischmidt*_____
Christina M. Heischmidt

19

331729026v.5