

EXHIBIT
A

# MAGIC LEAP, INC.

## EMPLOYMENT OFFER LETTER

July 9, 2021

David Chu
4974 Purdue Ave NE, Seattle, WA 98105

Dear David:

I am pleased to offer you a position with Magic Leap, Inc. (the "***Company***") as its Vice President, Software Engineering, commencing on July 26, 2021 (the "***Employment Start Date***"). You will receive an annual salary of $330,000, less applicable withholding, which will be paid in accordance with the Company's normal payroll procedures. You will work remotely in the Washington DC area and report to Anuj Gosalia. You should note that the Company reserves the right to modify compensation from time to time as it deems necessary.

Additionally, you will be eligible to receive a retention bonus of $1,200,000.00 (your "***Retention Bonus***") payable as follows:  (i) $600,000 of the Retention Bonus will be payable in your first paycheck following your Employment Start Date (the "***Initial Retention Payment***"); (ii) $300,000 of the Retention Bonus will be payable in your first paycheck following January 1, 2022 (the "***1Q22 Retention Payment***"); and (iii) $300,000 of the Retention Bonus will be payable in your first paycheck following April 1, 2022 (the "***2Q22 Retention Payment***," and the date of any such payment, the "***Retention Bonus Payment Date***"), in each instance less applicable withholding and paid in accordance with the Company's normal payroll procedures; provided that you remain a full-time employee of the Company as of each respective Retention Bonus Payment Date; provided further, that (A) with respect to the Initial Retention Payment, that if the Company terminates your employment for Cause or you end your employment with the Company for any reason, in either case before the six (6) month anniversary of the Employment Start Date, you will promptly pay the Company an amount equal to the Initial Retention Payment multiplied by a fraction, the numerator of which is equal to the number of days remaining in such six (6) month period as measured from the date of termination, and the denominator of which is equal to the total number of days in such six (6) month period; (B) with respect to the 1Q22 Payment, that if the Company terminates your employment for Cause or you end your employment with the Company for any reason, in either case before the three (3) month anniversary of January 1, 2022, you will promptly pay the Company an amount equal to the 1Q22 Retention Payment multiplied by a fraction, the numerator of which is equal to the number of days remaining in such three (3) month period as measured from the date of termination, and the denominator of which is equal to the total number of days in such three (3) month period; and (C) with respect to the 2Q22 Payment, that if the Company terminates your employment for Cause or you end your employment with the Company for any reason, in either case before the three (3) month anniversary of April 1, 2022, you will promptly pay the Company an amount equal to the 2Q22 Retention Payment multiplied by a fraction, the numerator of which is equal to the number of days remaining in such three (3)

Version: 8.22.2016

month period as measured from the date of termination, and the denominator of which is equal to the total number of days in such three (3) month period.

You will be eligible to participate in a bonus plan that the Board of Directors of the Company may adopt for employees of the Company. If such a plan is adopted, you may be eligible to earn an annual bonus of up to 35% of your then-current annual salary, less applicable withholding and paid in accordance with the Company's normal payroll procedures. The amount of any performance bonus to be paid to you is at the sole discretion of the Company, and you must be a full-time employee of the Company in good standing at the time any such performance bonus is to be paid to you.

Further, we will recommend to the Company's Board of Directors (the "***Board***")  that you receive a stock option to purchase 135,000 shares of the Company's common stock at an exercise price determined by the Board of Directors, which will generally be the current fair market value for such shares (the "***Option***"); provided that, in the event that the Board, in its sole discretion, determines that it cannot or would not be reasonable to grant the option (whether as a result of changes to the company's capitalization, a strategic transaction or otherwise), then, subject to approval of the Board, the Company shall grant you an equity award with a substantially equivalent value to the option in such form and on such terms and conditions as the Board shall determine. Your option will vest and become exercisable over a four-year period with 25% vesting on the one (1) year anniversary of your Employment Start Date and with the balance vesting equally every month thereafter over the following 36 months, and will be subject to the terms and conditions of the Company's 2012 Equity Incentive Plan (the "***Plan***").  The fair market value per share of the Company's common stock is determined by the Company's Board of Directors in good faith compliance with applicable guidance in order to avoid having the option be treated as deferred compensation under Section 409A of the Internal Revenue Code of 1986, as amended.  There is no guarantee that the Internal Revenue Service will agree with this valuation.  You should consult with your own tax advisor concerning the tax risks associated with accepting an option to purchase the Company's common stock.

You should be aware that your employment with the Company is for no specified period and constitutes at-will employment.  As a result, you are free to resign at any time, for any reason or for no reason.  Similarly, the Company is free to conclude its employment relationship with you at any time, with or without cause, and with or without notice.

For purposes of federal immigration law, you will be required to provide to the Company documentary evidence of your identity and eligibility for employment in the United States.  Such documentation must be provided to us within three (3) business days of your date of hire, or our employment relationship with you may be terminated.

You agree to relocate to the Washington DC area. The Company will reimburse you for up to $45,000.00 in reasonable, verified moving expenses to relocate you and your family from Seattle, WA to the Washington DC area. This relocation reimbursement offer expires twelve (12) months from the Employment Start Date. You agree to submit documentation covering every expense for which you will be seeking reimbursement. If the Company terminates your employment for Cause (as defined in the Plan (as defined above)) or you end your employment with the Company for any reason, in either case prior to the one (1) year anniversary of your

Employment Start Date, you will be obligated to promptly return all sums paid to you for relocation pursuant to this paragraph. Amounts paid to you or to a vendor on your behalf in connection with your relocation expenses are considered taxable income by the IRS, and therefore such amounts will be included in the calculation of your gross wages and tax withholding obligations.

You agree that, during the term of your employment with the Company, you will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of your employment, nor will you engage in any other activities that conflict with your obligations to the Company.

As a Company employee, you will be expected to abide by Company rules and regulations. You will be specifically required to sign an acknowledgement that you have read and that you understand the Company rules of conduct.  You will be expected to sign and comply with the Company's Proprietary Information and Inventions Agreement attached as Error! Reference source not found., which requires, among other things, the assignment of your rights to any intellectual property made during your employment at the Company and the nondisclosure of proprietary information.

To indicate your acceptance of the Company's offer, please sign and date this letter in the space provided below no later than **5:00 p.m.  EST** on July 11, 2021. If a signed copy of this letter is not received on or prior to the date above, the offer of employment shall be revoked and of no further force and effect.  Please note that this offer is contingent on your successful completion of a background check.  You will receive a separate notice and authorization form regarding that process.  This letter and the agreement relating to proprietary rights between you and the Company set forth the terms of your employment with the Company and supersede any prior representations or agreements, whether written or oral.  This letter may not be modified or amended except by a written agreement, signed by an officer of the Company and by you.

[Signature page follows]

DocuSign Envelope ID: 9ACCAEE7-3900-4783-B5E7-DEG7DA4B260B

We look forward to working with you at Magic Leap, Inc.

Very truly yours,

**MAGIC LEAP, INC.**

DocuSigned by:

*John Doherty*

By:\_\_\_\_EEC33888FACE4AB...\_\_\_\_
~~John Doherty~~
Name:_____
Title: CFO_____

AGREED AND ACCEPTED:

DocuSigned by:

*David Chu*

By:\_\_\_\_D8F83A0AD93E408..._____
Name:  David Chu