

EXHIBIT

F



# Planet Depos

# Transcript of Jose Baltazar

**Date:** February 11, 2026
**Case:** Chu -v- Magic Leap, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** clientservices@planetdepos.com
**planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

Transcript of Jose Baltazar
Conducted on February 11, 2026

1 (1 to 4)

---

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------
DAVID CHU,                    )
                              )
            Plaintiff,        )
                              )
        v.                    )   Case No.:
                              )   1:25-CV-00574-RCL
MAGIC LEAP, INC.,             )
                              )
            Defendant.        )
----------------------------)

Videotaped Deposition of JOSE BALTAZAR

Conducted Virtually

Wednesday, February 11, 2026

9:16 a.m.

Job No:  615999

Pages:  1-118

Reported by:  Tracy Obering, RPR/CCSR

---

**Page 2**

Videotaped deposition of JOSE BALTAZAR, conducted virtually.

Pursuant to Subpoena and Notice of Deposition of JOSE BALTAZAR, before Tracy Obering, Registered Professional Reporter and Notary Public in and for the State of Maryland, who administered the oath to the witness.

---

**Page 3**

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFF:

(Present Via Videoconference)

    JEREMY C. HUANG, ESQUIRE

    ROWE WEINSTEIN & SOHN, PLLC

    909 Rose Avenue

    Suite 640

    North Bethesda, Maryland  20852

    (301) 761-3837

ON BEHALF OF THE DEFENDANT:

    CHRISTINA M. HEISCHMIDT, ESQUIRE

    GIOVANNA BONAFEDE, ESQUIRE

    WILSON, ELSER, MOSKOWITZ,

    EDELMAN & DICKER, LLP

    8444 Westpark Drive

    Suite 510

    McLean, Virginia  22102

    (703) 245-9300

ALSO PRESENT:  ROB EBOCH, VIDEO TECH

            SUE PYBAS, VIDEOGRAPHER

---

**Page 4**

C O N T E N T S

EXAMINATION OF JOSE BALTAZAR            PAGE

    By Mr. Huang                        6, 113

    By Ms. Bonafede                     109

E X H I B I T S

(Retained by Counsel)

EXHIBIT NUMBER                              PAGE

2   Email from Mr. Baltazar, 10/19/2022      29

3   Proposed Distribution - L3 Leads Detailed  34

4   Email from Ms. Stewart, 12/16/2022       68

5   Email from Ms. Stewart, 1/21/2023        75

6   Email to Ms. Bernal, 4/25/2023           80

7   Email to Mr. Baltazar, 12/6/2022         55

8   Email to Ms. Bernal, 4/11/2023           64

9   Email from Shirley Zajia to Sheri Bernal  98

10  Email to Mr. Chu, 12/16/2022            102

---

Transcript of Jose Baltazar
Conducted on February 11, 2026

okay. But I will be here waiting so we can proceed.

MS. BONAFEDE: Great. Thank you. Be back in ten minutes.

(Off the record at 11:42 a.m.)

THE VIDEOGRAPHER: We are going back on the record at 11:53.

EXAMINATION BY COUNSEL FOR THE DEFENDANT

BY MS. BONAFEDE:

Q. Mr. Baltazar, did you ever tell Mr. Chu that his compensation plan had to be approved by the shareholders?

A. From what I recall, I believe so.

Q. And was that a phone call conversation or an email?

A. I think it was a verbal conversation when we had the discussion on the exhibit that was shown earlier on the December one.

Q. And independent of any conversation that you had with Mr. Chu, should he have known that all compensation plans had to be approved by the shareholders?

A. Yes.

Q. Why should he have known that?

A. Everyone in the leadership knew that everything had to be approved by the shareholders regarding compensation.

Q. And as -- I believe Mr. Chu was a vice president of the engineering or some engineering division, he was considered leadership that should have known about this?

A. That's correct.

Q. Okay. And did you have unilateral authority to approve a compensation plan?

A. No.

Q. Did Julie Larson Green have unilateral authority to approve a compensation plan?

A. No.

Q. So when you are trying to get a compensation plan approved by the shareholders do you present them with a written document?

A. If they require. Normally I'll do it as a phone call and say, here is the, you know, here's what we are proposing. This is the employee. Here's why we believe they should be considered.

And then normally we'll ask, has this been approved by John, by Peggy, like the email thread that we saw before. Yes.

Q. Okay. And is the written proposal to the employee like, for example, the charts that we saw presented to Mr. Chu, is that different than the final agreement that is Docusigned by the employee if the compensation plan is approved by the shareholders?

A. Sorry. Can you clarify that? I missed the beginning part.

Q. Sure. When Mr. Huang had shown you some email threads that had Excel spreadsheets or charts of the written proposal to Mr. Chu, do you recall that?

A. Yes. The charts on the email, yes. Okay.

Q. And so is the written proposal that's presented to the employee different than the final agreement that is Docusigned by the employee if the shareholders approve the compensation plan?

A. Yes. It's different. It's a more formal document.

Q. Is the final agreement that's Docusigned by the employee, is that something that's created by the legal department at Magic Leap?

A. It's a legal document, so the answer is yes. It's a legal binding document. It's not different like -- I mean, you can go back and Mr. Chu signed an offer letter, that also had a retention there, so more or less look like that, which is like a legal document. Yes.

Q. And so the final agreement that is to be Docusigned by the employee, that wouldn't be something that would be drafted by you; correct?

A. Yes. It's going to be an official document that has to be drafted and has to be signed. And if I recall -- I don't recall, I think it's probably Peggy that normally would sign or the CFO. It would be signed probably by someone else. And seemed like to what we were discussing when we are looking through the

Transcript of Jose Baltazar
Conducted on February 11, 2026

113

exhibits, it gets put into SuccessFactors. So there would be a template or something like that that legal has. And, you know, Vicky would kind of fill it in and then upload everything to get it official.

Q. And that final document that's Docusigned by the employee and leadership, whether you said that's the CFO or CEO, is that -- that is presented to the employee only after their shareholder approval; correct?

A. Yes. All the final signatures will only be done after the shareholder approval.

MS. BONAFEDE: Okay. Great. I have no further questions. Thank you, Mr. Baltazar.

THE WITNESS: Okay. Thank you so much.

MS. BONAFEDE: You're on mute, Mr. Huang.

FURTHER EXAMINATION BY COUNSEL FOR THE PLAINTIFF

BY MR. HUANG:

Q. Sorry about that. Yes, so it actually prompted a few more questions. Three questions and we're out. All right.

114

So you claim you spoke to Mr. Chu by phone. Do you remember when this call happened?

A. I don't remember.

Q. You don't remember. Was this before or after December 16th?

A. Way -- I mean, you mean when he told me -- which call are you referring to?

Q. You just told us that you spoke to Mr. Chu and told him there was additional approvals required, a few moments ago; correct?

A. Oh, you are referring to that. I thought you were asking me when he told me that he didn't get paid. That was after I left.

Yes. That was -- I think that's what I was saying when I spoke to him. I didn't say it was a phone call. I said when I spoke to him being a phone call or it could have been in person. I don't remember. It was the same question I think you had asked me before. It was whenever that email on the 16th, probably around that week when he discussed the new proposal and we are debating -- you know, when we're

115

negotiating, basically.

Q. So specifically before or after the email that Vicky shared with him on December 16th? Do you remember?

A. Probably negotiated before. Because there was a thread that you showed me that he says, "Hey, what is the status from our early conversation?" I think we discussed the week before.

Like I said, we had a very good relationship. So, you know, I wanted him to stay at the company and do what we can do.

Q. Do you follow up with him in writing on that?

A. On which one? On our conversation?

Q. Yes, sir.

A. That's where he messaged me. Right? He followed up with me saying, "Hey, what is the status from when we last spoke?"

And I said, "We'll send you a proposal ASAP." And then that's when Vicky then send the proposal.

116

MR. HUANG: Okay. That's all I have for him.

THE WITNESS: Okay. Thank you so much.

THE COURT REPORTER: Wait. Don't leave. Don't leave.

THE VIDEOGRAPHER: This concludes the deposition of Jose Baltazar. We are going off the record at 12:00 p.m.

MS. BONAFEDE: Mr. Baltazar will read and sign.

MR. HUANG: Plaintiff will be ordering video, probably, but put a hold on it for now.

THE VIDEOGRAPHER: Did defense need the video?

MS. HEISCHMIDT: No video at this time, with the understanding that we can order later if needed. We have a standing order for the transcript, I guess depending on -- let's go with a normal schedule for now.

(Off the record at 12:00 p.m.)

* * *

ACKNOWLEDGMENT OF DEPONENT