# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVID CHU,                                          *
                                                    *
  Plaintiff,                               *    Case No. 1:25-cv-00574-RCL
                                                    *
 vs.                                            *
                                                    *
MAGIC LEAP, INC.,                                   *
                                                    *
  Defendant.                               *

**DECLARATION OF PLAINTIFF DAVID CHU IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

I, David Chu, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

1.    I am the Plaintiff in this action and I am competent to testify to the matters stated herein based on my personal knowledge.

2.    I was employed by Magic Leap, Inc. ("Magic Leap") as Vice President, Software Engineering, from July 26, 2021 through my separation from the company.

3.    I reside in Fairfax County, Virginia, and performed all of my work for Magic Leap exclusively from Virginia at all times relevant to this action.

4.    My direct supervisor at all times relevant to this action was Julie Larson-Green, Magic Leap's Chief Technology Officer.

5.    In approximately September 2022, I raised the topic of retention compensation with Ms. Larson-Green. In early December 2022, Ms. Larson-Green connected me with Jose Baltazar, Magic Leap's Chief Human Resources Officer, who met with me to discuss the terms of a proposed retention package.

6.    On or about December 1, 2022, Ms. Larson-Green and I discussed and agreed upon milestones for the retention plan, including shipping improved hand tracking for Q1 2023.

7.      On December 16, 2022, I received Victoria Stewart's email with the retention plan and attached spreadsheet. I accepted the offer in writing that same day, and Ms. Larson-Green endorsed the arrangement in a reply-all to the same email chain.

8.      Based on the December 16, 2022 email exchange, I understood that Magic Leap and I had reached a binding agreement. In reliance on that agreement, I chose to remain employed at Magic Leap and committed to an accelerated timeline for the first milestone of improving hand tracking, which exceeded my standard, preexisting employment duties.

9.      At no point prior to April 2023 did anyone at Magic Leap inform me that my retention bonus was contingent on approval by noteholders, the Public Investment Fund of Saudi Arabia ("PIF"), Amendment No. 7 to a Note Purchase Agreement, or any other external party. No one informed me that the retention bonus was discretionary or subject to any condition beyond my completion of the milestones defined by Ms. Larson-Green.

10.     Specifically, Jose Baltazar never informed me, verbally or in writing, that my retention plan was merely a proposal or that it required shareholder, noteholder, or PIF approval.

11.     At no point did anyone at Magic Leap inform me that a formal DocuSign document was required before the retention agreement would become effective. Furthermore, during my tenure at Magic Leap, I was never provided with any employee handbook, written policy, or internal guideline stating that retention bonuses required a formal DocuSign, noteholder approval, or Compensation Committee sign-off to become binding.

12.     Nothing in the December 16, 2022 email exchange indicated to me that the retention plan was a "draft," "subject to further approval," or otherwise contingent on any additional steps beyond my acceptance and performance.

13.    I completed the Q1 2023 milestone and expected to receive the $100,000 quarterly payment in accordance with the retention plan. Throughout the entire first quarter of 2023, as I worked to ship the hand tracking improvements, neither Ms. Stewart, Ms. Larson-Green nor anyone else at Magic Leap ever indicated that my retention plan was inactive, paused, or awaiting further bureaucratic approvals.

14.    On April 17, 2023, I emailed Ms. Stewart to inquire about the status of my Q1 retention payment, which I had not received. On April 24, 2023, Ms. Stewart responded that the retention had been placed "on hold" pending a "Job Architecture initiative." This was the first time anyone at Magic Leap communicated any issue with the retention plan, and prior to Ms. Stewart's April 24, 2023 email, no one at Magic Leap had ever informed me that my retention bonus was connected to or dependent on any Job Architecture initiative.

15.    On or about April 25, 2023, I met with Sheri Bernal, Magic Leap's Chief Human Resources Officer, who discussed offering alternative forms of compensation such as equity grants or shadow equity in lieu of the cash-based retention. I expressed concern about the delay and uncertainty.

16.    On May 3, 2023, I met with CEO Peggy Johnson regarding my retention bonus. Ms. Johnson advised me that Magic Leap would not be paying the retention bonus and that the retention agreement was not valid because there was never a formally signed document.

17.    Magic Leap has not paid me any portion of the retention payment that I earned.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____03/23/2026_____ .

_____
David Chu