# Exhibit D

Deposition of Sheri Bernal (Excerpts), January 16, 2026



# Transcript of Sheri Bernal

**Date:** January 16, 2026
**Case:** Chu -v- Magic Leap, Inc.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** clientservices@planetdepos.com
**planetdepos.com**
**Michigan #8598 | Nevada #089F | New Mexico #566**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

--------------------------------X

DAVID CHU,                            :

          Plaintiff,           :

     v.                        :Civil Action No.:

MAGIC LEAP, INC.               :1-25-cv-00574-RCL

          Defendant.           :

--------------------------------X


          Deposition of SHERI BERNAL

             Virtually Conducted

          Friday, January 16th, 2026

             11:30 a.m. (EST)


Job No.: 613573

Pages 1 - 117

Reported by: Stefanie Towns, CCR

that -- that's typically the process, I       11:59:28

guess, I would say in terms of how we work    11:59:30

through those things.                         11:59:33

Q.   Okay.  Let me ask you this, so would --  11:59:34

wouldn't you have to get -- wouldn't normally 11:59:35

you have to get all those approvals before    11:59:37

that's offered to the employee?               11:59:39

     MS. BONAFEDE:  Objection.  Form.  You     11:59:41

can answer if you understand the question,    11:59:43

Sheri.                                        11:59:47

A.   I'm not sure.  Can you just repeat that,  11:59:49

please?                                       11:59:50

Q.   Okay.  So before a offer in terms of a change  11:59:51

in compensation or a bonus plan, would that   11:59:54

have to be approved first before it's offered 11:59:57

to the employee?                              12:00:00

A.   You know, I -- I would say that the process, 12:00:07

again, to the point in theory is that nothing 12:00:10

should be offered to an employee without      12:00:14

going through that process.  So that's how     12:00:16

it's supposed to work.                        12:00:20

Q.   Okay.  All right.  So I'd like to pull up --  12:00:22

Q. But based on the text of the email, what is    12:03:38
your understanding of what this email text is    12:03:42
conveying?    12:03:43

A. I would say it looks like it's conveying a    12:03:46
discussion that's been taking place to try    12:03:49
to -- try to come up with what might -- might    12:03:53
be interesting in terms of compensation.    12:03:55

Q. Does it say it's a draft anywhere on this    12:04:00
document?    12:04:03

A. I can only see the end part again but I --    12:04:04

MR. HUANG:  Can you scroll back to the    12:04:06
top, please?  Thank you.    12:04:08

Q. I'll review the question.  Does it say    12:04:14
anywhere that this is a draft?    12:04:25

A. I don't see the word draft.    12:04:26

Q. Okay.  Does it say anywhere that it's subject    12:04:28
to, let's say, note holder or PIF approval    12:04:32
anywhere in this document?    12:04:36

A. I don't think we typically advertised that,    12:04:37
at least when I was there.    12:04:41

Q. Okay.    12:04:43

A. But I don't see that, no.    12:04:43

like via email, but no formal offer or signed    01:15:45

documents as we had done in practice before    01:15:50

today.  Why would you mention that?  What    01:15:52

would be the significance of that?  Why would    01:15:54

you mention that to Ms. Green in this email?    01:15:56

A.  I -- I can speculate.  I don't -- I don't    01:16:10

remember exactly why.  But I think I'm -- I'm    01:16:11

probably trying to say, you know, we should    01:16:15

honor this, you know, any -- anything like    01:16:20

this should be done more formerly if we're    01:16:22

going to have conversations with employees is    01:16:25

probably what I'm trying to convey there.    01:16:28

I'm sure I was quite frustrated.    01:16:31

Q.  Okay.    01:16:33

A.  So I -- I don't know.  You know I -- that's    01:16:33

why what I'm --    01:16:39

Q.  All right.  Let's move on to the second    01:16:40

sentence.  It says, the only reason I cannot    01:16:43

offer the bonus because we do not have -- we    01:16:46

do not have bonus dollars from the PIF.  It    01:16:47

was not approved by them and I was told flat    01:16:49

out no.    01:16:53

Q.    This email you told Mr. Chu that you were
told by the investor to hold off until the
job architecture, correct?

A.    Mm-hmm.

Q.    It doesn't say that you told him that you
were told flat out no by the PIF.  Is that
correct?

A.    So the first bullet says, I spoke to him
openly that we had approval on design, not on
funding.  And that we would come back -- so
my recollection we would come back after job
architecture and try to get the approval on
funding.  And I was getting creative with him
around, maybe exploring I think bullet No. 4,
so exploring other -- I think that should
have been like options with equity and other
things, because I wasn't sure that we were
going to get the -- the actual funding.  But
the way it was designed previously was a flat
out no.

Q.    Okay.  But that's not what it says in the
second bullet point.  The second bullet point

01:19:35
01:19:39
01:19:42
01:19:43
01:19:44
01:19:46
01:19:48
01:19:49
01:19:52
01:19:54
01:19:56
01:19:59
01:20:02
01:20:05
01:20:06
01:20:09
01:20:12
01:20:13
01:20:15
01:20:19
01:20:20
01:20:23

Transcript of Sheri Bernal
Conducted on January 16, 2026                    95

that you told Vicky -- that you told Mr. Chu          01:20:25

was that the largest investor asked us to            01:20:26

hold off until after the job architecture,           01:20:27

but that's not -- that's not what was told to        01:20:31

you, correct?                                        01:20:33

A.  Oh, sure that -- sure that was told me.  Yup.    01:20:33

Q.  Okay.  But your email that you wrote to          01:20:36

Ms. Green earlier that morning it says, you          01:20:38

were told flat out no.  That you acknowledged        01:20:41

there was no mention about a job architecture        01:20:43

or any other sort of pause in the retention          01:20:46

funding, correct?                                    01:20:49

A.  Right.  But that doesn't mean I'm going to --    01:20:51

I know a lot of stuff as an HR person.  I            01:20:52

don't tell every single person everything I          01:20:56

know.  I'm going to -- I'm going to have             01:20:58

conversations with different people at              01:21:00

different times and I'm going to tell them           01:21:01

different things that are relevant in that           01:21:03

particular context.  But that doesn't mean           01:21:05

I'm going to sing like a bird and tell David         01:21:05

every single piece and part of a conversation        01:21:09

Transcript of Sheri Bernal
Conducted on January 16, 2026                        96

I had with the PIF.  That -- that doesn't
even make sense.

Q.  Okay.  Because you -- you wanted him to stay
on, if you had told him that the PIF told no,
what do you think -- I mean he would have --
you needed him to stay on so you needed to
tell him that there was maybe a chance that
there would be a retention plan?  Would that
be fair?

A.  Didn't know --

        MS. BONAFEDE:  Objection.
Mischaracterizes the witness' testimony.

A.  Yeah, that's -- that's not my -- I'm not
technical.  That's not my call on whether we
needed him or not.  That's why I was asking
in that other email.  I don't know.  I like
him, as a person but I don't know if we need
him.

Q.  Okay.  So why did you -- why did you kick the
can down the road in terms of the denial?

A.  Of -- oh, of -- of not -- can you -- can you
rephrase that so I'm not --

CERTIFICATE OF REPORTER - NOTARY PUBLIC

I, Stefanie Towns, the officer before whom the foregoing deposition was taken, do hereby certify that the foregoing transcript is a true and correct record of the testimony given; that said testimony was taken by me and thereafter reduced to typewriting under my direction; that reading and signing was requested; and that I am neither counsel for, related to, nor employed by any of the parties to this case and have no interest, financial or otherwise, in its outcome.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 28th day of January 2026.

My Commission Expires:

_Stefanie Towns_

01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46
01:54:46