**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DAVID CHU | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 1:25-cv-00574-RCL |
| vs. | * | |
| | * | |
| MAGIC LEAP, INC. | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

Defendant Magic Leap, Inc. ("Magic Leap") asks this Court to grant summary judgment

on the theory that no binding agreement was ever formed and that any arrangement was purely

discretionary on Magic Leap's part, or alternatively that any withholding was the product of a

bona fide dispute shielding it from treble damages for a knowing violation of the Virginia Wage

Payment Act (the "VWPA" or the "Act"). Magic Leap fails to carry its burden on multiple fronts.

Substantively, Magic Leap's entire motion rests on the premise that no contract was

formed, yet its memorandum devotes almost no discussion to what Virginia jurisprudence

actually requires for contract formation, failing to cite a single Virginia case on point. While

Defendant does cite guidelines from the Virginia Department of Labor and Industry ("DOLI")

Field Operations Manual (the "Manual") and case law to argue the bonus was "discretionary" or

that its withholding of the retention payment at issue was the result of a "bona fide dispute,"

these defenses are logically circular. Under the very DOLI guidelines Magic Leap cites, a bonus

is only discretionary if there is "no prior promise or agreement." Because Magic Leap

completely fails to establish that contract formation failed under Virginia law, its premise collapses, and its derivative VWPA defenses collapse with it.

Furthermore, Defendant's motion is procedurally defective because it fails to meaningfully connect its bare legal conclusions to its Statement of Undisputed Material Facts ("SUMF"). Magic Leap's Memorandum of Law operates entirely divorced from its SUMF: throughout its Argument section, Magic Leap advances legal conclusions without a single citation to its factual statement, citing directly to exhibits rather than its own factual statement. It is not the burden of this Court to sift through Defendant's disjointed filings to construct the bridge between its unbriefed legal theories and its SUMF. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996).

As Magic Leap has failed to brief the dispositive law governing the underlying agreement, and because the undisputed facts defeat each of its defenses even on their own terms, its motion should be denied.

LEGAL STANDARD

Summary judgment is appropriate only where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating the basis for its motion, and "it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *New York Rehabilitation Care v. N.L.R.B.*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (citing *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)). Further, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived. *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).

ARGUMENT

**A.      A Binding Contract Was Formed on December 16, 2022**

Magic Leap's primary argument is that it does not owe the retention payment to Chu because the December 16, 2022 e-mail exchange, which on its face is a written contract, was not a "final agreement", since the retention plan was never subsequently approved by the Board of Directors and never memorialized in a fully executed amendment to Chu's employment agreement. Def. Mem. at 13. But as noted in the Introduction, Magic Leap advances this conclusion without citing a single Virginia case on contract formation, and leaves the Court wanting for any legal basis to conclude that the December 16, 2022 e-mail exchange is not a contract under Virginia law. Its formation defense is therefore precisely the kind of "perfunctory and undeveloped argument, unsupported by pertinent authority," that is deemed waived. *Johnson*, 953 F. Supp. 2d at 250.

The law Magic Leap ignores is straightforward: under Virginia jurisprudence, a contract simply requires "an offer and acceptance by the parties, supported by legal consideration." *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980). No particular form of writing is required, and an exchange of correspondence, including e-mail, is sufficient to form a binding contract so long as the communications manifest mutual assent to definite terms, "even though the parties understand that the agreement shall thereafter be expressed in a formal writing." *Chittum v. Potter*, 216 Va. 463, 467 (1975).

The December 16, 2022 e-mail exchange amongst Victoria Stewart, Jose Baltazar, Julie Larson-Green, and Chu satisfies every element as 1) it conveyed definite terms of $600,000 in total compensation, paid in quarterly installments of $100,000 (Year 1) and $50,000 (Year 2), 2) it identified legal consideration in the form of Chu's continued employment and completion of

quarterly milestones as defined by his immediate supervisor and Magic Leap's Chief Technical Officer, Larson-Green (which had already been agreed upon by Chu and Larson-Green prior to this e-mail), and 3) it contained Chu's unconditional acceptance of the offer. Despite offering no legal authority for why this exchange does not constitute a valid contract, and despite the exchange itself containing no indication it was predicated on further conditions, Magic Leap insists that there were additional requirements before the arrangement would be considered a binding contract. However, these contentions fail for four independent reasons.

      *1.*       *Magic Leap Cannot Identify the Approval It Claims Was Required*

First, Magic Leap insists that the retention plan was not final because it lacked approval from its Board of Directors. Def. Mem. at 13. However, Magic Leap cannot even consistently identify the approval it claims was required, let alone establish that Chu knew of it. Magic Leap's memorandum asserts that the retention plan required approval by the Board (Def. Mem. at 13), yet, its responses to Plaintiff's Requests for Admission state that "board-level approval was not required for individual milestone-based bonuses". Pl. Ex. I, RFA Resp. (ECF No. 20-10), No. 31. Instead, Magic Leap stated that that the operative approval was from the Saudi Public Investment Fund ("PIF"), the "noteholder" under Amendment No. 7 to the Senior Secured Notes Purchase Agreement. Pl. Ex. I, RFA Resp. No. 31; Def. Ex. L at DEF_000157 (Bernal e-mail of April 25, 2023: "The only reason I cannot offer him the bonus is because we do not have bonus dollars from the PIF. It was not approved by them and I was told flat out: no."). At deposition, Magic Leap's corporate designee, Steven McCree Lake, offered yet another answer pointing to a "compensation committee" that he ultimately conceded may not have existed in December 2022. Pl. Ex. L, McCree Lake Dep. (Additional Excerpts) at 116:6-13.

If Magic Leap itself cannot maintain a consistent position on what approval was required, Chu can hardly be charged with knowledge of a requirement his employer has never been able to pin down.

2.      *The December 16, 2022 E-mail Exchange is a Written Agreement*

Second, Magic Leap insists that the retention plan never went into effect because the December 16, 2022 e-mail exchange was a "proposed framework", and there was no formally signed agreement. Def. Mem. at 14. However, it is undisputed that the text of the December 16, 2022 e-mail exchange never identified itself as such, and under Virginia law, this exchange suffices as a contract.

As mentioned above, Virginia does not require that a contract be in any particular form of writing, and an exchange of correspondence, including e-mail, is sufficient to form a binding contract so long as the other elements of the contract discussed *supra* are present. *Chittum*, 216 Va. at 467. Magic Leap makes hay of the lack of a "signed" document, but under the Virginia Uniform Electronic Transactions Act ("UETA"), an "electronic signature" in an e-mail satisfies this requirement. Va. Code §§ 59.1-480(8), 59.1-485(d). Stewart's December 16 e-mail offer, sent from her corporate e-mail address in her capacity as Head of Global Total Rewards, bearing her typed name and title, and Chu's acceptance e-mail bearing his typed name, constitutes a signed electronic record under the UETA. *See Total Quality Logistics, LLC v. Riverside Turf, LLC*, No. 0009-22-2 (Va. Ct. App. Nov. 1, 2022) (unpublished).

Further, Magic Leap's own witnesses testified that the formal documents were merely an administrative memorialization that followed the agreement, not a precondition to it. Pl. Response to Def. SUMF ¶ 8. Accordingly, the December 16, 2022 e-mail exchange serves as a valid contract per the Virginia Supreme Court's holding in *Chittum*, which considered a binding

agreement formed through correspondence, even where a "formal writing" was expected to follow but never materialized; that the formal writing here was never generated for Chu does not mean no agreement existed.

To the extent Magic Leap contends that the December 16 e-mail exchange is ambiguous as to whether a binding agreement was formed, that ambiguity must be resolved against Magic Leap as the drafter. *Martin & Martin v. Bradley Enters.*, 256 Va. 288, 291 (1998). Stewart, in conjunction with Baltazar and on behalf of Magic Leap, drafted the offer, selected the language, and set the terms. Magic Leap cannot now claim the language it chose was too ambiguous to bind it.

    3.      *Objective Theory of Contracts Renders These Requirements Moot*

Third, even if the Court were to accept Magic Leap's assertions regarding Board approval and the memorialization requirement at face value, the undisputed record confirms that no one at Magic Leap ever communicated to Chu that the retention plan was contingent on any of these additional measures. Pl. Ex. A, Chu Decl. (ECF No. 20-2), ¶¶ 10-11; Pl. Ex. D, Bernal Dep. (ECF No. 20-5) at 34:19-20. Virginia jurisprudence is clear that a party's "real intention" is irrelevant where it conflicts with their outward expression, and in this instance Magic Leap failed to convey these so-called "real intentions." *Wells v. Weston*, 229 Va. 72, 78 (1985).

The December 16 e-mail is complete on its face and plain in its terms. Contract terms are interpreted by determining the intent of the parties at the time the contract was made, "giving full effect to the words the parties actually used." *Layne v. Henderson*, 232 Va. 332, 337-38 (1986). Further, where the agreement is also "plain and unambiguous in its terms," the Court may not look beyond its four corners. *Harris v. Woodrum*, 3 Va. App. 428, 432 (1986). The e-mail states $600,000 in total compensation, quarterly installments, milestones defined by Larson-Green, and

continued employment. It contains no reference to Board approval, PIF approval, or DocuSign execution. Nor is the e-mail ambiguous in the relevant sense: there are no terms where there are "two competing interpretations that are equally possible", as opposed to one party "hypothesiz[ing] opposing interpretations." *Worsham v. Worsham*, 74 Va. App. 151, 168 (2022). Here, Magic Leap has identified no language in the December 16 e-mail that is susceptible to two equally plausible readings, but insists that the Court import additional "context" from uncommunicated internal approval processes that appear nowhere in the exchange itself.

Nor did Magic Leap communicate these supposed requirements through any other channel. Despite claiming that Chu "should have known" about such requirements (Def. Mem. at 14), Magic Leap has produced no evidence explaining how Chu could have known of requirements that were never communicated to him (Pl. Ex. A, Chu Decl. ¶¶ 10-11; Pl. Ex. D, Bernal Dep. at 34:19-20), that no written policy memorialized (Pl. Ex. I, RFA Resp. No. 33; Pl. Ex. M, McCree Lake Dep. (Additional Excerpts) at 32:4-33:1; Pl. Ex. E, McCree Lake Dep. at 164:18-21; Pl. Ex. D, Bernal Dep. at 34:19 ("I don't think we typically advertised that")), and that Magic Leap's own witnesses could not consistently identify (see Section A.1, *supra*). An objective manifestation of assent cannot be invalidated by imputing a duty of clairvoyance to the counterparty. As Magic Leap possessed the sole power to condition its offer on Board approval or formal memorialization before presenting it to Chu, its failure to do so renders its outward expressions of agreement binding.[1]

---

[1] Magic Leap's SUMF ¶¶ 9 and 10 assert that Larson-Green and Baltazar "did not have authority to bind Magic Leap with regard to employee bonus compensation." However, Magic Leap advances no such argument in its Memorandum of Law. As set forth in the Legal Standard *supra*, such perfunctory assertions unsupported by pertinent authority are deemed waived. *See Schneider*, 412 F.3d at 200 n.1; *Johnson*, 953 F. Supp. 2d at 250. In any event, the assertion is meritless. Neither Larson-Green nor Baltazar communicated the offer; Victoria Stewart did, and Magic Leap's SUMF does not challenge her authority. Moreover, both Baltazar and Larson-Green possessed apparent authority under Virginia law. *See Wright v. Shortridge*, 194 Va. 346, 352 (1952). Baltazar testified that his responsibilities included handling employee compensation (Pl. Ex. L, Baltazar Dep (Additional Excerpts). at 19:14-

*4.        Magic Leap's Own Contemporaneous Documents Confirm the Agreement*

Even if the Court were to find any ambiguity in the parties' December 16 exchange, the post-formation conduct of both parties confirms that they understood a binding agreement existed. Under Virginia law, when contract terms are "doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed." *Dart Drug Corp. v. Nicholakos*, 221 Va. 989, 995 (1981); *accord Coal Operators Cas. Co. v. C.L. Smith & Son Coal Co.*, 192 Va. 619, 626 (1951).

For months after the December 16 exchange, Magic Leap treated the retention as an existing commitment. On January 21, 2023, Stewart wrote to Larson-Green: "As a reminder, we had *agreed* to a $600k retention for David Chu." Def. Ex. K (emphasis added). On April 11, 2023, Shirley Zajia, a member of the compensation team, e-mailed Bernal and Stewart that Chu was "due payment this month" "[b]ased on commitment approved by Jose B." Def. Ex. L at DEF_000102. On April 25, 2023, Larson-Green wrote that the refusal to pay was "another integrity thing and not following through with what we say we are going to do," that she and Chu "were both unaware that his retention was conditional on some future retention process," and that "it is beyond disappointing that we are not keeping our word." Pl. Ex. F, Defendant's Document Production (ECF No. 20-7) at DEF_000153. The same day, Bernal responded to Larson-Green's e-mail noting that while there was a lack of "formal offer or signed documents," she stated that "the only reason I cannot offer him the bonus is because we do not have bonus dollars from the PIF. It was not approved by them and I was told flat out: no." *Id.* at DEF_000157. At no point in this e-mail did Bernal identify the absence of a DocuSign as a

---

18), and Larson-Green, as CTO, directed Chu to Baltazar and was designated to define and evaluate the milestones (Pl. Ex. A, Chu Decl. ¶ 5; Pl. Ex. E, McCree Lake Dep. at 55:3-14).

rationale for non-payment, and indeed that rationale did not emerge until the following week, when Chu memorialized his understanding of a meeting with Bernal and Stewart: "I learned from our discussion that your view is that since there was no DocuSign, you feel you are not obligated by the original agreement." *Id.* at DEF_000205. Yet at her deposition, Bernal returned to her original position, admitting that she thought Magic Leap "should honor this." Pl. Ex. D, Bernal Dep. at 90:7-9.

Rather than the words of an employer that believed no agreement existed, they are the words of an employer that knew it had made a commitment and could not fund it because its largest investor intervened after the fact.

**B.        Chu's Retention Bonus Was Non-Discretionary**

Magic Leap's second defense is that Chu's retention bonus was "discretionary" and therefore exempt from the Virginia Wage Payment Act (the "Act" or "VWPA") pursuant to Section 9.00(A) of the Manual. This argument rests on two premises, both of which fail: first, that the retention bonus was never subject to a final agreement, and second, that the "sole discretion" language in Chu's 2021 employment offer letter governs the retention bonus.

The first premise fails for the reasons discussed at length in Section A, but Section 9.00(B) of the DOLI Manual independently confirms Chu's retention bonus was non-discretionary. Per this section, a bonus is non-discretionary when:

1) the employer promises to pay a sum in advance related to work to be performed;

(2) the employer determines the amount prior to payment;

(3) the sum is promised as a result of a contract, either implied or written; and

(4) the sum is promised as an incentive to cause the employee to remain with the employer.

DOLI Manual § 9.00(B)(1)-(4). Here, Magic Leap promised in advance to pay to Chu $100,000 per quarter, upon the completion of specific technical milestones. The amount was fixed before any work was performed. The sum was promised pursuant to a written exchange constituting an agreement between employer and employee, and the plan was expressly designed as an incentive to cause Chu to remain with the company.

Four of Magic Leap's five reasons for classifying the bonus as discretionary amount to nothing more than a repackaged formation argument that addresses only element (3) of Section 9.00(B). Each of the five reasons Magic Leap offers — no signed agreement, no Board approval, only "proposed terms" discussed, and no signed amendment— goes to whether a binding contract was formed. Def. Mem. at 13.

Magic Leap does not dispute that the amount was fixed in advance (element 1), determined prior to payment (element 2), or promised as an incentive to retain Chu (element 4). Its only argument is that there was no contract (element 3), which it has already failed to demonstrate.

The second faulty premise is that the "sole discretion" language in Chu's employment agreement governs the retention bonus. Magic Leap selectively quotes this language to give the Court the impression that all bonuses it offers its employees are discretionary. However, the full paragraph from the employment agreement reveals a completely different context:

> You will be eligible to participate in a bonus plan that the Board of Directors of the Company may adopt for employees of the Company. If such a plan is adopted, you may be eligible to earn an *annual bonus of up to 35% of your then-current annual salary*, less applicable withholding and paid in accordance with the Company's normal payroll procedures. The amount of any *performance bonus* to be paid to you is at the sole discretion of the Company, and you must be a full-time employee of the Company in good standing at the time any such performance bonus is to be paid to you.

> Def. Ex. A at 2 (emphasis added).

Read in context, this paragraph plainly governs the annual performance bonus program: the "sole discretion" sentence follows and modifies the preceding reference to "an annual bonus of up to 35% of your then-current annual salary." Defendant's own witnesses drew a distinction between the annual bonus and the retention bonus at issue in this case. Stewart testified that the annual bonus is "completely separate" from a retention plan, explaining that the annual bonus is "contingent upon the performance of the company" with "no guarantee that that would be paid," whereas a retention plan "specifically states what has to be done by when in order to earn X, Y, Z bonus amount." Pl. Ex. B, Stewart Dep. at 147:1-148:9. McCree Lake likewise testified that the annual bonus and retention plan "are distinct": the annual bonus is "discretionary," while a retention plan involves "a specific agreement, details related to how it's going to be assessed, other types of conditions." Pl. Ex. E, McCree Lake Dep. at 90:9-91:5. That Magic Leap advances this conflation despite its own witnesses' unequivocal testimony to the contrary speaks for itself.

**C.      There is no "Bona Fide Dispute" as to what Chu is owed.**

Magic Leap argues that even if the Court were to find it in violation of the VWPA, treble damages are unavailable because a "bona fide dispute" existed as to whether wages were owed. Def. Mem. at 16-17.

As a preliminary matter for the Court's clarification, the "bona fide dispute" referenced in *Muratore v. Foster Aesthetics, L.L.C.,* 113 Va. Cir. 414, 427 (Chesapeake 2024)*,* is not the statutory defense found in subsection (E) which fully immunizes an employer from criminal prosecution where the failure to pay "was because of a bona fide dispute between the employer and its employee." [2] Va. Code § 40.1-29(E). Instead, the *Muratore* court used the phrase "bona

---

[2] The remaining cases Magic Leap cites regarding "bona fide dispute", *Racklin v. Zeta Global Corp.*, 628 F. Supp. 3d 625 (E.D. Va. 2022) and *Davenport v. HirePower Pers., Inc.*, No. 5:22-cv-074, 2024 U.S. Dist. LEXIS 71873 (W.D. Va. Apr. 19, 2024), use the phrase in the context of Subsection E's criminal safe harbor rather than from the

fide dispute" to describe its factual finding that the employer's contemporaneous interpretation of an ambiguous contract term was plausible enough that some of the wrongful withholdings did not satisfy subsection (K)'s definition of "knowingly", and merited only double, rather than treble, damages. *Muratore*, 113 Va. Cir. at 427.

Unlike the situation at hand, the wrongful withholding *Muratore* ultimately found "not knowing" involved a genuinely ambiguous contract term where the employment contract set the employee's salary at "$30.00/hr., minimum of 36 hrs./week," while a separate employee manual provided that the employee would be paid half her normal rate during "training" hours. The employer relied on the manual to reduce the employee's hourly rate during hours it classified as training, bringing her pay below the contractual floor in certain weeks. The court ultimately found that interpretation wrong, but plausible at the time of withholding, because the employer was acting on a contemporaneous, good-faith reading of two documents that were arguably in tension. *Id.* at 422, 427.

No analogous circumstances exist here as the terms of the December 16, 2022 e-mail exchange were unambiguous, and the record here is clear that Magic Leap's own employees understood a binding commitment existed and that Chu was owed payment for Q1 2023. *See* Section A.4, *supra*. Magic Leap cannot retroactively manufacture a "bona fide dispute" out of its investor's post-hoc veto of its retention budget. A third-party investor's refusal to authorize bonus dollars is not a genuine legal disagreement over whether an employee earned their wages; it is simply a breach of contract driven by internal funding constraints. Magic Leap's own Chief Human Resources Officer admitted the "only reason" for non-payment was because the PIF "flat out" said "no" to providing the bonus dollars. Def. Ex. L at DEF_000157. An employer's

---

civil damages framework under Subsections J and K. Neither court analyzes how a bona fide dispute bears on the "knowingly" standard that governs treble damages, the only context in which the defense is relevant here.

inability to secure funding approval from its largest investor does not erase its knowing violation of the law, and the VWPA was enacted to protect employees from exactly this kind of bad-faith bait-and-switch. *Nestler v. Scarabelli*, 77 Va. App. 440, 466 (2023).

CONCLUSION

For the foregoing reasons, Plaintiff David Chu respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Jeremy C. Huang
Jeremy C. Huang, DC Bar No. 1000849
ROWE WEINSTEIN & SOHN, PLLC
909 Rose Avenue, Suite 640
N. Bethesda, MD 20852
(T) 301-770-4710 / (F) 301-770-4711
jhuang@rowepllc.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of April, 2026, a copy of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Response to Defendant's Statement of Undisputed Material Facts, and Supplemental Exhibits were served electronically upon the following person(s):

Christina M. Heischmidt
Giovanna Bonafedes
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102
Christina.Heischmidt@wilsonelser.com
*Attorney for Defendant*

/s/ Jeremy C. Huang
Jeremy C. Huang