Exhibit M

Deposition of Steven McCree Lake (Additional Excerpts), January 21, 2026

forward with what Mr. Chu would likely have known were additional steps in order to formalize the agreement.

Q.    Okay.  Let me dig down on that. What -- what gives Magic Leap -- what evidence do you have that Mr. Chu was aware of these additional requirements?  Is there anything written that -- that was, like, a written policy procedure regarding this additional -- these additional approvals?

A.    Mr. -- Mr. Chu was a very senior leader in the organization at the time.  He oversaw a significant part of our software team and was part of Julie's, the CTO leadership team.  Given the business conditions at Magic Leap and the transparency in the organization, he certainly should have known that there were more steps.  In addition to that, his original employment agreement featured the types of legal language and signatures that he should of expected to be in place for this type of agreement to be

formalized.

Q.    To Magic's knowledge, does Mr. Chu have any legal training whatsoever?

A.    Not to my knowledge.

Q.    Was he an attorney?

A.    No.

Q.    Did his resume reflect he went to law school at any time?

A.    I haven't seen his resume.

Q.    Okay.  All right.  So after Mr. Chu's response, did -- were there any additional -- you see a response from Ms. Larson-Green, correct?

A.    I do.

Q.    Okay.  And so she wrote, happy to hear that, looking forward to all we can accomplish together.  Do you see that?

A.    I do.

Q.    Okay.  Did Ms. Larson-Green understand there were any additional approvals required for this to move forward?

A.    Yes.  She would have definitely

Transcript of Steven McCree Lake, Corporate Designee
Conducted on January 21, 2026                     59

MS. HEISCHMIDT:  No, no, you're --

BY MR. HUANG:

Q.    It's on -- yeah.  You can move down to page 2.  Starting there.  The bottom of page 2 and then scrolling into page 3?

Please read -- yeah, read to yourself the Interrogatory Number One and then the answer, and then let me know when you're done.

A.    Okay.

Q.    So from what I understand from this answer, you were the one who provided the information in collaboration with -- with in-house counsel, the answers to the interrogatories; is that correct?

A.    In-house counsel provided me with the discovery materials and we responded together.

Q.    Okay.  I want -- if you could scroll to page 6.  All right.  So you see this document?  You see this page?  It says, verification of defendant's answers to

plaintiff's interrogatories?

A.    I do.

Q.    Okay.  And it says, I hereby certify under penalty of perjury, I'm executing these answers to interrogatories on behalf of Magic Leap, and I assisted in the preparation of the foregoing answers.

A.    I do.

Q.    Okay.  And is that your signature on this page?

A.    It is.

Q.    Okay.  All right.  So I want you to scroll up to Interrogatory Number Seven, which is on the preceding page.  Let me know when you've finished reading the interrogatory as well as the answer.

A.    I have.

Q.    Okay.  So just summarizing this interrogatory, basically asked Magic Leap if Mr. Chu achieved -- completed the milestone for Quarter 1, 2023.  Is that -- would that be accurate summary of the question?

A.    Yes.

Q.    Okay.  And your -- and Magic Leap's answer, which you assisted with, that the answer was, plaintiff did complete the performance milestone; is that correct?

A.    As I read this, that is correct.  However, it also says that -- I'm not a lawyer, but the objection has to do with the vague nature of the question.  And so my response is the same and no different in that --

Q.    Okay.

A.    -- the milestone is vague.

Q.    Okay.  So let me clarify.  The -- the actual objection says that it's vague in terms of the exhibits not being labeled.  It doesn't refer to the question being vague.  So it says if you want to read the objection to yourself, you can, but regardless with that, the answer that you provided was that plaintiff completed the Q1 perf- -- performance milestone.  Does that

answer seem --

MS. HEISCHMIDT:  Objection.

Q.    Okay.  Please answer.

MS. HEISCHMIDT:  Finish.  Sorry. Finish your statement.

Q.    Yeah.  So -- but the statement that you provided, regardless, was that plaintiff completed the Q1 performance milestone; is that accurate?

A.    That's --

MS. HEISCHMIDT:  Objection. Form.

THE WITNESS:  That's correct.

BY MR. HUANG:

Q.    Okay. All right.  So going back to your prior answer, would you agree that it would be Magic Leap's position that Mr. Chu completed the hand-tracking milestone?

A.    My position is that the milestone itself is highly vague.  However, yes, we agree that he completed the milestone.

Q.    Okay.  All right.  So the

you referring to that these discussions started?

A.     Okay.  Yeah.  This -- this -- these discussions would have started, I believe, toward the end of 2022.  Around the time that, you know, there that did -- there was a decision made to form a compensation committee and other types of changes being made.  So I would -- my -- my -- to the best of my knowledge, it was in Q4 of 2022 when the -- these -- these deeper conversations were underway.

Q.     Okay.  So you mentioned the compensation committee that had not been -- that was something that was formed as part of this discussion?

A.     To -- to the best of my knowledge, it was.  I believe that was instantiated in December of 2022 or early 2023.

Q.     Okay.  Would you have said -- would -- would -- to your knowledge, based on

your review of the documents and understanding of the company's policies, was the compensation committee formed at the time that Mr. Chu had discussed his compensation package on December 16th, 2022?

A.    I'm -- I am not certain of the exact timeline.  However, at that time, there would have been significant alignment and dialogue with the board about the compensation committee.  So it may not have been fully instantiated by virtue of the governance and charter, but it would have been an entity that everyone was seriously considering and understood would be formed.

Q.    Okay.  I want to go back to Exhibit 5.

THE TECH:  Please, stand by.  Now, showing Exhibit 5.

BY MR. HUANG:

Q.    All right.  So I'm going to go to the second paragraph.  You recall this is the email from Ms. Julie Green to Sheri