**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID CHU                          )
                                   )
     Plaintiff,                    )
                                   )
     v.                            )   Case No. 1:25-cv-00574-RCL
                                   )
MAGIC LEAP, INC.                   )
                                   )
     Defendant.                    )
                                   )

**DEFENDANT MAGIC LEAP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Defendant Magic Leap, Inc. ("Magic Leap" or "Defendant"), by undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7(h), hereby files this Opposition to Plaintiff's Motion for Summary Judgment. For the reasons stated herein and in Defendant's Statement of Disputed Material Facts, Defendant respectfully submits that Plaintiff's Motion for Summary Judgment should be denied.

## I.   INTRODUCTION

Plaintiff David Chu's ("Chu" or "Plaintiff") premise that a contract was formed on December 16, 2022 is flawed for several reasons. First, it ignores Magic Leap's past practice and procedure for compensation approvals, which Chu was privy to as an employee in senior leadership. As a senior leader who has dealt with the compensation approval process for his direct reports, Chu knew or should have known that any retention bonus plan akin to his required the approval of the Board of Directors and needed to be outlined in a formal, Docusigned agreement. No such Board approval or written, signed agreement was ever obtained in accordance with Magic Leap practice, procedure, and policy. Willful ignorance does not create a contract.

333925863v.2

Second, the terms of the December 16, 2022 "proposal" were not definite, not sufficiently defined, and were never finalized. Specifically, detailed performance milestones were never finalized, the compensatory structure of Chu's retention bonus was never approved by the Board of Directors, and no written agreement was created for Chu's signature, memorializing any supposed agreement.

Lastly, Magic Leap's post-December 16, 2022 course of dealings are consistent with a lack of mutual assent as to Chu's retention bonus. Plaintiff's Motion for Summary Judgment also presents incomplete and misleading deposition testimony and discovery responses, which Defendant points out in this Opposition and its accompanying Statement of Disputed Material Facts.

Contrary to Plaintiff's contention, Defendant did not retroactively rescind an agreement between Chu and the Company, rather, no final agreement as to Chu's bonus plan was ever reached. Plaintiff's Motion for Summary Judgment should therefore be denied.

## II. ARGUMENT

### A. Summary Judgment Standard

A motion for summary judgment must be denied where the evidence "presents a sufficient disagreement to require submission to a jury" and can only be granted under circumstances where it is determined that the evidence "is ***so one-sided*** that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986) (emphasis added). Summary judgment is not appropriate where there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," the dispute is deemed to be "genuine." *Anderson*, 477

2

U.S. at 248. This well-established and long-standing principle mandates that courts afford substantial deference to the nonmoving party, view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in favor of the nonmoving party, and "accept the nonmoving party's evidence as true." *Brown v. Paulson*, 597 F. Supp. 2d 67, 72 (D.D.C. 2009); *see also Anderson*, 477 U.S. at 255; *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013). As the Supreme Court has explained, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Accordingly, the judge may not "assess the credibility of witnesses" at the summary judgment stage as the "[e]valuation of the credibility of witnesses must be left to the factfinder." *United States v. Project on Gov't Oversight*, 454 F.3d 306, 313 (D.C. Cir. 2006).

## B. The December 16, 2022 Email Exchange did not Create a Valid and Enforceable Contract

Chu's breach of contract claim must fail, as a matter of law, because no final agreement existed between Magic Leap and Chu regarding his 2023 retention bonus plan. While Magic Leap acknowledges that a proposed framework for a retention plan was presented to Chu, it was never formalized, approved by the Board of Directors, or executed into a formal amendment to Chu's employment agreement. Magic Leap's outward expression made clear that there was no mutual assent to the terms of Chu's potential bonus plan on December 16, 2022. Plaintiff argues that Victoria Stewart's December 16, 2022 email to him "circling back with a retention plan that . . . will have key milestones, *as defined by Julie*, associated with the payouts" constituted an offer under Virginia law.[1] Ex. J to Def's MISO MSJ, ECF 1-6 at 1 (emphasis added). This is not so.

---

[1] Defendant does not dispute that Virginia law applies to contract formation in this case.

3

Stewart's email also included the following language: "Please take a moment to review the attached . . . and provide us with your feedback and/or any questions you might have." *Id.* In doing so, Stewart was inviting collaboration on a proposal, as Magic Leap had done with prior variations of his retention plan. *See* Ex. H to Def's MISO MSJ at 1 (12/2/22 email from Julie Larson-Green to Chu with a different proposed framework for a bonus plan, to which Chu provided his feedback, stating: "Thanks for sharing. To be honest, it's pretty far from expectations . . . . *Id*. at 1-2.).

Moreover, the December 16, 2022 email from Stewart could not have been a formal offer because the record is clear that no specific milestones were defined. Without the defined milestones, the Court cannot determine the exact obligations of the parties. While it is true that Chu sent Larson-Green a potential framework for performance milestones on December 2, 2022, *see* Ex. H to Def's MISO MSJ, ECF 1-5, at 1, and Larson-Green responded: "Looks good to me!", in that same breath, as described above, Larson-Green presented Chu with a proposed framework for the compensatory portion of his bonus plan, which Chu rejected. *Id.* at 1-2. In other words, when Stewart presented Chu with another proposed framework for his bonus plan on December 16, 2022, the non-monetary terms needed to be negotiated once more as well. Yes, Stewart's December 16, 2022, email did not say the "magic words" that her email was a "draft" or "for discussion purposes only" or that it was "subject to further approval", but the prior communications between Magic Leap leadership and Chu regarding his proposed plan made it clear that this was an ongoing conversation and Stewart specifically requested Chu's feedback. Context is important.

Contrary to Plaintiff's misleading snips of Stewart's deposition transcript, Stewart was clear that specific milestones needed to be defined, and that it had not been so defined. Ex. B to

4

Def's MISO MSJ, Stewart Depo. Tr. at 62:2-4 ("We had agreed to the 600k. But what you left out is to which she needed to assign specific milestones"), at 63:6-8 ("She has high level milestones, but they were not specific. She had not set up a way that we could track them against the retention plan."), at 63:12-20 ("She has to define what the milestones are. But even she is acknowledging here she hadn't set up a way to track them yet. And that is critical to know whether or not we can pay out a retention bonus at a particular time for something to be achieved. So she had not finalized the details associated with the milestones in which she wanted David to achieve.") Stewart further confirmed, post-December 16, 2022, that Chu's bonus plan had not been agreed to and approved in March 2023. *See* Ex. M to Def's MISO MSJ, at DEF_000121 ("*Once approved*, he will receive the full amount of what we discussed with him but the timing mifht be off slightly.") (emphasis added).

Chu's Motion for Summary Judgment also conflates the timeline and suggests that Magic Leap CEO Peggy Johnson approved the bonus plan. To the contrary, as demonstrated by the undisputed emails, Johnson approved a prior iteration of Chu's proposed bonus plan on October 20, 2022, as an approval of the concept, not a final approval of Chu's bonus plan. Ex. G to Def's MISO MSJ at DEF_000122. At the time Johnson approved the bonus plan concept for Chu, no specific milestones were tied to the bonus plan, no Board approval was obtained, and no written agreement was signed. Moreover, a revised proposed bonus plan was internally discussed and presented to Chu on December 16, 2022. All communications with Larson-Green, Johnson, and Baltazar were pre-negotiations used to nail down the framework for the potential bonus plan prior to it being presented to the Board of Directors for approval and subject to reduction in writing.

5

Further, Chu's December 16, 2022 response to Stewart's email was not an acceptance of an offer. Chu responded with: "Thank you for providing the details here, and for investing in me. Let's do it." Ex. J to Def's MISO MSJ, ECF 1-6, at 1. At this point, no milestones had been specified by Larson-Green. *Id*. Larson-Green responded on December 16, 2022 with: "Happy to hear that!" *Id*. Contrary to Plaintiff's contention, however, Larson-Green's response, based on the previous emails between the parties, was clearly an acknowledgment that Chu wanted to move forward in the bonus plan process by getting the proper approvals and sufficiently defining the specifics of his plan.

Further, as a Magic Leap employee in senior leadership, Chu knew and was made aware that all significant bonus plans required the approval of the Board of Directors[2] and, as an aside, needed to be memorialized in a written amendment to his employment agreement, to be signed by the company and countersigned by Chu. No such Board of Directors approval was obtained and no written agreement was signed. Plaintiff's Motion for Summary Judgment incorrectly contends that Magic Leap admitted it "never communicated these internal requirements to Chu." This is directly contrary to the testimony of former Magic Leap Chief Human Resources Officer Jose Baltazar who specifically testified he told Chu that Board approval was required to move forward with his bonus plan. Ex. F to Def's MISO MSJ, Baltazar Depo. Tr. at 109:10-110:10 ("Q. Mr. Baltazar, did you ever tell Mr. Chu that his compensation plan had to be approved by the shareholders? A. From what I recall, I believe so. Q. And was that a phone call conversation or an email? A. I think it was a verbal conversation when we had the discussion on the exhibit

---

[2] Contrary to Plaintiff's contention, Defendant is not arguing that Amendment No. 7 to the Note Purchase Agreement applies to Chu's potential bonus plan. Amendment No. 7 is, however, evidence of Defendant's process for approving compensation plans, which required Board approval.

333925863v.2

that was shown earlier on the December one. Q. And independent of any conversation that you had with Mr. Chu, should he have known that all compensation plans had to be approved by the shareholders? A. Yes. Q. Why should he have known that? A. Everyone in the leadership knew that everything had to be approved by the shareholders regarding compensation. Q. And as – I believe Mr. Chu was a vice president of the engineering or some engineering division, he was considered leadership that should have known about this? A. That's correct."). Chu also admitted that he knew additional approvals were needed for compensation plans, based on his experience with his direct reports. Ex. B to Def's MISO MSJ, Chu Depo. Tr. at 73:20-74:18 ("Q. Can you recall any situation in which there was a compensation drop off with one of your direct reports that needed to be addressed? A. Yeah. Similar to what we're talking about here. Yeah, there probably was one or two or three. I just don't remember the names or anything like that. Q. Without needing to know the names, how was that addressed? A. Again, I don't remember how the sausage was made on those, but I think, if I were to guess, it would be similar to what we saw in this case, which was – it was, you know, report expressed that they were – somebody that worked for me expressed that the compensation wasn't up to where they needed it to be, and there was some back and forth, and then either rme or HR person would communicate, Hey, here's your new numbers, what do you think? It would be written form, and if that was agreed upon, then we would move forward and talk to Kevin."); *see also* Ex. 1, Def. Corp. Rep. Depo Tr. at 32:4-33:1 ("Q. Okay. Let me dig down on that. What – what gives Magic Leap – what evidence do you have that Mr. Chu was aware of these additional requirements? Is there anything written that – that was, like, a written policy procedure regarding this additional – these additional approvals? A. Mr. – Mr. Chu was a very senior leader in the organization at the time. He oversaw a significant part of our software team and was part of Julie's, the CTO leadership

7

team. Given the business conditions at Magic Leap and the transparency in the organization, he certainly should have known that there were more steps. In addition to that, his original employment agreement featured the types of legal language and signatures that he should of expected to be in place for this type of agreement to be formalized.").

As no final agreement as to Chu's retention bonus plan was reached, Chu's breach of contract claim cannot stand.[3]

### C.  Chu's VWPA Claim Must Fail Because Chu's Bonus was Discretionary

As outlined in Defendant's Motion for Summary Judgment, Chu's VWPA claim must also fail because Chu's proposed bonus was discretionary. Pursuant to the Virginia Department of Labor and Industries ("DOLI") regulations, discretionary bonuses are not considered wages and thus cannot be collected via a VWPA claim. Va. Code § 40.1- 29. Under these regulations, a discretionary bonus is defined as any benefit, which is not required to be given under the employment contract, and which may therefore be given or withheld at the employer's discretion and does not include any compensation which the employee was reasonably led to believe the employer was obligated to pay him upon completion of work performed. VA Dept. of Labor & Industry, Division of Labor and Employment Law, Field Operations Manual, Ch. 10, § 9.00(A).

A discretionary bonus has the following characteristics applicable to this case: (1) the employer retains discretion with respect to the fact of payment without prior promise or agreement; and (2) the employer retains discretion with regard to the sum, if any, to be paid

---

[3] As an aside, Plaintiff's Motion for Summary Judgment mentions a former Magic Leap employee, John Monos', compensation plan negotiations. Not only are Monos' negotiations entirely distinct from Chu's negotiations, and entirely distinct from the determination of whether a contract with formed between the Company and Chu, but Plaintiff mischaracterizes Stewart's testimony on the topic. Stewart was not suggesting in her deposition that she would be drafting the legal agreement between Magic Leap and Monos, to be DocuSigned, prior to getting Board approval. *See* Ex. 2, Stewart Depo. tr. at 45:1-5 ("Q. So you were already generating the document; correct, at this point? A. Right. This doesn't specifically say that's what I did at this point. It says that I would be working on that").

333925863v.2

without prior promise or agreement. *Id.* According to these guidelines, Chu's proposed retention bonus was discretionary because: (1) as described above, no final agreement existed memorializing all aspects of Chu's retention bonus plan; (2) no final agreement was signed by Magic Leap or Chu; (3) no final agreement was approved by Magic Leap's Board of Directors, whose approval was known as required to memorialize any bonus; (4) only the proposed terms of Chu's retention bonus plan were discussed; and (5) Chu's employment agreement specifies that all compensation and bonuses are subject to Magic Leap's sole discretion.

It was Magic Leap's policy and practice for retention bonuses that there be a signed amendment to an employee's offer following approval by the Board of Directors. Ex. F to Def's MISO MSJ at 112:4-113:12; Ex. D to Def's MISO MSJ at 21:6-22:20; Ex. B to Def's MISO MSJ at 64:1-11. That did not occur in Chu's case.

Further, Chu's employment agreement specifically states that: (1) "You will be eligible to participate in a bonus plan that the Board of Directors of the Company may adopt for employees of the Company"; (2) "The amount of any performance bonus to be paid to you is at the sole discretion of the Company, and you must be a full-time employee of the Company in good standing at the time any such performance bonus is to be paid to you"; and (3) "[T]he Company reserves the right to modify compensation from time to time as it deems necessary." Ex. A to Def's MIS MSJ.

While Magic Leap acknowledges that a framework for a proposed bonus plan was presented to Chu, it was never formalized or executed into a formal amendment to Chu's employment agreement, nor was it ever approved by the Board of Directors.

In support of his claim for treble damages, Chu cites to Va. Code § 40.1-29(J), which provides that: "[i]f the court finds that the employer knowingly failed to pay wages to an

9

employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Since the statute "delineates between knowing and unknowing conduct, the Court must analyze each wrongful withholding and make findings regarding the employer's state of mind." *Muratore v. Foster Aesthetics, L.L.C.*, 113 Va. Cir. 414, 427 (Chesapeake 2024) ("the statute avails greater liability if the employer knew or intentionally withheld wages").

Va. Code § 40.1-29(K) states that "a person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information." Withholdings that are "the subject of a *bona fide* dispute" are not knowing. *Muratore*, 113 Va. Cir. at 427 ("The Court finds that the employer's argument on the issue was plausible, albeit, a breach of contract, but not a knowing disregard of that truth."); *see, e.g.*, Va. Code § 40.1-29(E) (An employer who "refused to pay wages [is guilty of a crime] . . . unless the failure to pay was because of a bona fide dispute between the employer and its employee."); *see also Racklin v. Zeta Global Corp.*, 628 F. Supp. 3d 625, 647 (E.D. Va. 2022) (plaintiff's "VWPA claim fails because the statute only covers earned wages, and does not apply if the failure to pay was because of a bona fide dispute between the employer and its employee") (internal quotations and citations omitted); *see also Davenport v. HirePower Pers., Inc.*, No. 5:22-cv-074, 2024 U.S. Dist. LEXIS 71873, at *30 (W.D. Va. Apr. 19, 2024) ("a cause of action does not exist where pay was not withheld or where the alleged failure to pay was because of a bona fide dispute between the employer and its employee"). The delineation between knowing and unknowing conduct on the part of the employer is important because the "purpose of [the VWPA] is to protect employees

10

from bad acting employers." *Nestler v. Scarabelli*, 77 Va. App. 440, 466 (2023). Therefore, treble damages are only available upon a specific finding of knowing withholding of wages.

Chu's treble damages claim must fail because the "knowing" standard is not met as there was a bona fide dispute between Magic Leap and Chu as to what, if anything, was owed to him. *See Davenport*, 2024 U.S. Dist. LEXIS 71873, at \*30-31 ("even construing [defendant's] subsequent refusal to provide [plaintiff] the backpay he demanded in 2022 as withholding earned wages under the VWPA, such withholding was the result of a bona fide dispute between the employer and employee. . . . Accordingly, the appropriate vehicle for Davenport to seek redress is his breach of contract claim") (internal quotation omitted); *see also Muratore*, 113 Va. Cir at 427.

### III. CONCLUSION

For the foregoing reasons, and those that will be urged upon the Court at oral argument, if any, Defendant Magic Leap, Inc. respectfully requests that the Court deny Plaintiff David Chu's motion for summary judgment.

11

333925863v.2

Dated: April 16, 2026                    Respectfully Submitted,

                                         **MAGIC LEAP, INC.**
                                         By Counsel


                                          _/s/ Giovanna R. Bonafede_
                                         Christina M. Heischmidt (DC Bar No. 1006759)
                                         Giovanna R. Bonafede (DC Bar No. 90011443)
                                         WILSON ELSER MOSKOWITZ
                                         EDELMAN & DICKER LLP
                                         8444 Westpark Drive - Suite 510
                                         McLean, Virginia 22102
                                         (703) 245-9300 (phone)
                                         (703) 245-9301 (fax)
                                         Christina.Heischmidt@wilsonelser.com
                                         Giovanna.Bonafede@wilsonelser.com
                                         _Counsel for Defendant Magic Leap, Inc._

333925863v.2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of April, 2026, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will then send a notification of such filing to the following:

Jeremy C. Huang
ROWE WEINSTEIN & SOHN, PLLC
909 Rose Ave., Suite 640
N. Bethesda, MD 20852
(301) 770-4710 (phone)
(301) 770-4711 (fax)
jhuang@rowepllc.com
*Counsel for Plaintiff David Chu*

*/s/ Giovanna R. Bonafede*
Giovanna R. Bonafede

333925863v.2