**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DAVID CHU | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:25-cv-00574-RCL |
| | ) |
| MAGIC LEAP, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT OF ITS**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h), Defendant Magic Leap, Inc. ("Magic Leap" or "Defendant") respectfully submits the following Statement of Disputed Material Facts in Support of its Opposition to Plaintiff's Motion for Summary Judgment.

1. Magic Leap, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Florida. Compl. ¶ 2; Answer ¶ 2.

    **RESPONSE: Undisputed.**

2. Magic Leap employed Plaintiff David Chu as Vice President, Software Engineering, commencing July 26, 2021. **Exhibit F: Excerpts from Defendant's Document Production, DEF 000008.**

    **RESPONSE: Undisputed that Magic Leap employed Plaintiff David Chu as Vice President, Software Engineering. Disputed as to the start date. Ex. 3, DEF_000007 (showing revised employment start date as August 9, 2021).**

3. Plaintiff's annual base salary was $330,000, with an annual performance bonus to be paid "at the sole discretion of the Company". Exhibit F at DEF_000008-000009.

**RESPONSE: Undisputed that Plaintiff's annual base salary for the first year of employment was $330,000 and that any performance bonus was to be paid at the sole discretion of the Company. Disputed that Plaintiff was guaranteed a performance bonus. Ex. A to Def's MISO MSJ.**

4. At all times relevant to this action, Plaintiff was a resident and citizen of the Commonwealth of Virginia and performed all of his work for Magic Leap exclusively from Fairfax County, Virginia. **Exhibit A: Chu Declaration ¶ 4.**

**RESPONSE: Undisputed.**

5. The Proprietary Information and Inventions Agreement ("PIIA") executed at the start of Plaintiff's employment contains a forum selection clause providing for "exclusive venue of the state and federal courts located in the District of Columbia for any lawsuit filed by either party arising from or relating to this Intellectual Property Agreement." Exhibit F at DEF_000016.

**RESPONSE: Undisputed as to the form selection clause in the PIIA. Disputed that the PIIA was executed at the start of Plaintiff's employment. Ex. F to Pl's SUMF at DEF_000016; Ex. 3.**

6. The PIIA's choice-of-law provision states only that "[t]his Intellectual Property Agreement will be governed by the laws of the District of Columbia." Exhibit F at DEF_000016.

**RESPONSE: Undisputed that the quotes language appears in the PIIA. Disputed that this sentence is complete. Ex. F to Pl's SUMF at DEF_000016.**

7. In approximately September 2022, Plaintiff raised the topic of retention compensation with his direct supervisor, Chief Technology Officer Julie Larson-Green. Exhibit F, DEF_000153 (Larson-Green April 25, 2023 email: "Jose started the process with him in early October (after

2

David raised it with me in last September), well before the talk of any wider retention program."); Exhibit A, ¶ 6.

**RESPONSE: Undisputed.**

8.    Larson-Green stated that at the time the retention plan was offered, Magic Leap "couldn't afford to lose him given the work he is responsible for with [N]vidia and the importance to the business," and the plan was designed to incentivize Plaintiff "to remain with the employer." Exhibit F at DEF_000153.

**RESPONSE: Disputed that a retention plan was formally offered. Disputed that the plan was designed to incentivize Plaintiff "to remain with the employer" as this language does not appear in the cited exhibit. Undisputed that the first quote (starting with "couldn't afford") appears in the cited exhibit.**

9.    In early October 2022, Jose Baltazar, Magic Leap's Chief Human Resources Officer, initiated the formal retention process and obtained approval from CEO Peggy Johnson for a proposed $400,000 retention package for Plaintiff. **Exhibit C: Deposition of Jose Baltazar (excerpts)** 30:3-11; **Exhibit B: Deposition of Victoria Stewart (excerpts)** 57:6-9; Exhibit F at DEF_000122-123.

**RESPONSE: Disputed that Johnson's approval was sought and obtained in early October 2022. Disputed that the cited exhibits support the contention. Ex. F. to Pl's SUMF at DEF_0000122-123.**

10.    Plaintiff rejected the initial $400,000 proposal and negotiated for higher amounts. Exhibit C at 59:16-18 ("David negotiated and didn't agree, so we had to go back and redo the numbers").

**RESPONSE: Undisputed.**

11.    The retention plan figures were revised from $400,000 to $600,000 over the ensuing weeks as a result of Plaintiff's negotiations. Exhibit C at 60:16-18 ("from October all the way to December, since the numbers change is because he was negotiating").

**RESPONSE: Disputed that a retention plan purporting to provide $600,000 to Chu was agreed to by Magic Leap. Undisputed that the second iteration of the proposed bonus framework was for $600,000.**

12.    Larson-Green had the "authority to set the milestones" for Plaintiff's retention plan. Exhibit B at 124:1-3; **Exhibit E: Deposition of Steven McCree Lake (excerpts)** at 55:414.

**RESPONSE: Disputed that Larson-Green had the authority to bind Magic Leap. Ex. E to Pl's SUMF at 55:3-14.**

13.    The retention plan was designed so that Plaintiff would produce those milestone deliverables sooner than they would have otherwise been otherwise, rather than merely performing his regular duties. Exhibit B at 131:17-21; 132:14-18.

**RESPONSE: Undisputed.**

14.    On or about December 1, 2022, prior to finalizing the agreement, Plaintiff and Larson-Green discussed and agreed upon milestone concepts, including: "Q[N]. Ship improved hand tracking; Q[N+1]. Ship AR Cloud Dense Map Merge for Digital Twins; Q[N+2]. Ship Omniverse Private Beta; Q[N+3]. Ship new cloud perception capabilities." Compl. Ex. C, ECF No. 1-5; **Exhibit I: Defendant's Responses to Plaintiff's First Set of Requests for Admissions** No. 19 (admitting authenticity).

**RESPONSE: Disputed that an agreement between the parties was ever finalized, including as to the milestones. Ex. B to Def's MISO MSJ at 62:2-4, 63:6-8, 12-20.**

15.     Larson-Green reviewed and approved the milestone concepts, responding: "Looks good to me!" Compl. Ex. C, ECF No. 1-5; Exhibit I at No. 19 (admitting authenticity).

**RESPONSE: Undisputed that the quoted language appears in the cited exhibit. Disputed that an agreement between the parties was ever finalized, including as to the milestones. Ex. B to Def's MISO MSJ at 62:2-4, 63:6-8, 12-20.**

16.     On December 16, 2022, Victoria Stewart, Magic Leap's Head of Global Total Rewards, emailed Plaintiff a retention plan stating: "We are circling back with a retention plan that provides quarterly payments over the next two years (2023 -2024). The plan is designed for more in Year 1 vs. Year 2 and will have key milestones, as defined by Julie, associated with the payouts." Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity).

**RESPONSE: Disputed that Stewart's December 16, 2022 email was a formal offer of the retention plan. Otherwise, undisputed.**

17.     Stewart attached a password-protected spreadsheet, "Compensation_Retention_DChu.xlsx," specifying exact payment amounts of $100,000 per quarter in Year 1 and a total value of $600,000 over two years. Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity).

**RESPONSE: Undisputed.**

18.     The December 16, 2022 email was sent to Plaintiff and copied to Jose Baltazar, Magic Leap's Chief Human Resources Officer, and Julie Larson-Green, Magic Leap's Chief Technology Officer and Plaintiff's direct supervisor. Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity).

**RESPONSE: Undisputed.**

19.    Stewart asked Plaintiff to "review the attached . . . and provide us with your feedback and/or any questions you might have." DEF_000155. The email did not state that the plan was a "draft," "for discussion purposes only," or "subject to further approval." Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity); Exhibit E at 30:6-20.

**RESPONSE: Disputed that Stewart's December 16, 2022 email was a formal offer of the retention plan. Otherwise, undisputed.**

20.    On December 16, 2022, Plaintiff responded in writing: "Vicky, Jose and Julie, Thank you for providing the details here, and for investing in me. Let's do it." Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity).

**RESPONSE: Undisputed.**

21.    Later that same day, Larson-Green endorsed the acceptance, replying: "Happy to hear that! Looking forward to all we can accomplish together in 2023!" Compl. Ex. D, ECF No. 1-6; Exhibit I at No. 20 (admitting authenticity).

**RESPONSE: Disputed that the cited email from Larson-Green was an acceptance or that it endorsed an acceptance. This is a legal conclusion. Otherwise, undisputed.**

22.    The Q1 2023 milestone required Plaintiff to ship improved hand tracking. Compl. Ex. C, ECF No. 1-5; Exhibit I at No. 19 (admitting authenticity); Exhibit A, ¶ 13.

**RESPONSE: Disputed that any specific milestone was agreed to by Magic Leap. This is a legal conclusion.**

23.    Plaintiff completed the Q1 2023 milestone. **Exhibit H: Defendant's Answers to Plaintiff's First Set of Interrogatories**, Answer No. 7 (Magic Leap admitting "Plaintiff completed the Q1 performance milestone").

**RESPONSE: Disputed that any specific milestone was agreed to by Magic Leap. This is a legal conclusion.**

24.    On April 25, 2023, Larson-Green confirmed Plaintiff's milestone completion, stating: "He has delivered on his milestone for Q1 and is on track for Q2." Exhibit F at DEF_000153. Larson-Green further confirmed that Plaintiff's milestones were "product milestones, which he excels at." *Id.*

**RESPONSE: RESPONSE: Disputed that any specific milestone was agreed to by Magic Leap. This is a legal conclusion. Otherwise, undisputed.**

25.    On January 21, 2023, Stewart wrote to Larson-Green, Baltazar, and Sheri Bernal (Magic Leap's incoming Chief Human Resources Officer): "As a reminder, we had agreed to a $600,000 retention for David Chu." Exhibit F at DEF_000217. When confronted with this language at deposition, Stewart confirmed: "We had agreed to the 600k." Exhibit B at 62:2.

**RESPONSE: Disputed to the extent the quotes are misleading. Stewart's January 21, 2023 email stated: "As a reminder, we had agreed to a $600k retention for David Chu (attached) to which you were going to assign specific milestones." Ex. F to Pl's SUMF at DEF_000217. Stewart's deposition testimony was as follows: "We had agreed to the 600k. But what you left out is to which she needed to assign specific milestones." Ex. B to Pl's SUMF at 62:2.**

26.    On March 21, 2023, Larson-Green wrote to Stewart: "I think we owe David Chu his quarterly retention payment at the end of the month. Are we on track to do that?" **Exhibit G: Excerpts from Defendant's Confidential Document Production**, DEF_000270.

**RESPONSE: Undisputed.**

27.    Stewart responded the following day stating that Chu's retention "was rolled into the Retention Plan that is still pending final approval with the hope we can proceed with providing agreements to the selected participants in Q2." Exhibit G at DEF_000270.

**RESPONSE: Undisputed.**

28.    Larson-Green objected, "I am pretty sure his agreement started in Q1, not Q2. I am sure he will ask me about it soon. What do I tell him?" Exhibit F at DEF_000121.

**RESPONSE: Undisputed as to the language of the email, but disputed that Larson-Green "objected." That is not supported by the cited exhibit.**

29.    Stewart then confirmed: "Once approved, he will receive the full amount of what we discussed with him but the timing might be off slightly." Exhibit F at DEF_000121.

**RESPONSE: Undisputed that Stewart's email contains the quoted language, but disputed to the extent this snippet is misleading. Stewart's full email states: "He needs to understand that his retention is part of the broader Retention Plan that is still pending final sign off. We hope to have a better answer for you after tomorrow's meeting with the BoD/Comp Committee but we haven't received the okay to proceed forward with generating the employee agreements/notifications as of yet. Once approved, he will receive the full amount of what we discussed with him but the timing might be off slightly. Will keep you posted." Ex. F to Pl's SUMF.**

30.    On April 11, 2023, Shirley Zajia, Magic Leap's Director of HR Business Partners, wrote to Bernal and Stewart after meeting with Larson-Green, "David Chu - Based on commitment approved by Jose B., he is due payment this month." Exhibit F at DEF_000093.

**RESPONSE: Undisputed.**

31.    Magic Leap did not pay Plaintiff any portion of the retention bonus. Exhibit I at No. 9.

   **RESPONSE: Undisputed.**

32.    When Plaintiff inquired about his retention payment on April 17, 2023, Stewart responded on April 24, 2023: "Your target retention we had discussed was part of the broader Retention Plan that has been placed on hold at this time, pending the outcome of the Job Architecture initiative that is underway." Exhibit F at DEF_000146; Exhibit B at 87:18-88:5.

   **RESPONSE: Undisputed.**

33.    Plaintiff was never previously told that his retention bonus was beholden to any Job Architecture Initiative. Exhibit A, ¶ 14; Exhibit B at 88:7-20.

   **RESPONSE: Disputed. The cited testimony from Stewart deposition states that she did not recall whether Plaintiff was previously told about the Job Architecture Initiative. Ex. B to Pl's SUMF at 88:7-20.**

34.    Despite this statement that the retention was "on hold", Bernal admitted to Larson-Green on April 24, 2023 that "We don't have any retention here for him specifically. We are assuming we will work the retention program, as well as possible alternatives (equity, shadow stock etc) in parallel with this and target to have decision by end of JA." Exhibit F at DEF_000158.

   **RESPONSE: Disputed that Magic Leap ever agreed to or finalized Chu's proposed bonus plan. Otherwise, undisputed.**

35.    Larson-Green was surprised and taken aback, stating "Revisiting his retention as part of a new retention plan doesn't seem right given that he received paperwork on what to expect over 6 months ago...To me this is another integrity thing and not following through with what we say we are going to do. David and I were both unaware that his retention was conditional on some

9

future retention process. We had given retention to others around this timeframe and it was not made clear that this would be any different. Jose started the process with him in early October (after David raised it with me in last September), well before the talk of any wider retention program. I have many mails on this and it is beyond disappointing that we are not keeping our word." Exhibit F at DEF_000158.

> **RESPONSE: Disputed as to the characterization that Larson-Green was surprised and taken aback as this is not supported by the cited exhibit. Otherwise, undisputed.**

36.    Bernal responded to Larson-Green's complaint stating, "The only reason I cannot offer him the bonus is because we do not have bonus dollars from the P[ublic] I[nvestment] F[und of Saudi Arabia]. It was not approved by them and I was told flat out: no." Exhibit F at DEF_000157.

> **RESPONSE: Undisputed except to the extent that this snippet is misleading. The prior paragraph in Bernal's email states: "I will go back and look at what you shared in writing. I understood that this was not his sign on commitment (that was paid in full thankfully) but the same retention promise made to others with the understanding that 'we were working on retention for them'. In this case we have him an option of what that would look like via email but no formal offer or signed documents as we had done in practice before or do today." Ex. F to Pl's SUMF.**

37.    Larson-Green responded by lamenting a broader pattern of Magic Leap making and then failing to honor compensation commitments, stating, "Each time we create a list, folks are implicitly promised something is on the way. I personally need to stop being part of the charade

and just level with people that what they have is what they have and not lead them on." Exhibit F at DEF_000208.

**RESPONSE: Disputed as to the characterization that Larson-Green lamented a broad patter of Magic Leap making and then failing to honor compensation commitment as this is not supported by the cited exhibit. Otherwise, undisputed.**

38.     Bernal met with Chu later that day and discussed with him alternative forms of compensation, including equity and stock options, to satisfy the obligation when cash funding appeared uncertain. **Exhibit D: Deposition of Sheri Bernal (excerpts)** at 94:13-20; Exhibit F at DEF_000205.

**RESPONSE: Disputed that Magic Leap had a legal obligation to pay Chu a retention bonus, as no agreement was obtained. This is a legal characterization and legal conclusion. Otherwise, undisputed.**

39.     Rather than admitting that the PIF had flat out told her no, Bernal instead told Chu that they did not have approval on funding, and that the investor had "asked us to hold off until after J[ob] A[rchitecture]." Exhibit F at DEF_000126. Exhibit D at 94:21-96:2.

**RESPONSE: Disputed as the evidence does not support that Bernal failed to admit that the PIF had told her no. Otherwise, undisputed.**

40.     Plaintiff later met with CEO Peggy Johnson who told him that the retention agreement was not valid as there was never a formally signed document. Exhibit A, ¶ 16.

**RESPONSE: Disputed as no contract was formed between the parties and because this contention contains legal conclusions.**

41.     Despite this, Bernal admitted at her deposition that there was an agreement and that Magic Leap should have honored it. Exhibit D at 90:8–9.

> **RESPONSE: Disputed as the cited testimony does not support the contention that there was an agreement between the parties. This characterization is also misleading, as the full line of questioning states: "Q. So going back, your email was – first you talked about – it says, I'll go back and look at what we shared – what you shared in writing. I understand it was not his sign on commitment that was paid in full, thankfully. And you noted in your last sentence, the first paragraph, in this case we gave him an option of what we would do – that would look like via email, but no formal offer or signed documents as we had done in practice before today. Why would you mention that? What would be the significance of that? Why would you mention that to Ms. Green in this email? A. I – I can speculate. I don't – I don't remember exactly why. But I think I'm – I'm probably trying to say, you know we should honor this, you know, any – anything like this should be done more formerly [sic] if we're going to have conversations with employees is probably what I'm trying to convey there. I'm sure I was quite frustrated."). Ex. 4, Bernal Depo. Tr. at 89-90.**

42.     In this litigation, Magic Leap relies on Johnson's assertion as its primary defense, with its corporate designee, Steven McCree Lake, testifying that all retention bonuses require a "signed and countersigned" formal agreement and Victoria Stewart stating they required a "DocuSign to be executed". Exhibit E at 66:13, 211:4; Exhibit B at 26:13-14.

**RESPONSE: Disputed as this contention, specifically the first phrase, contains argument, legal assertions, and mischaracterizes Defendant's legal defenses. Otherwise, undisputed.**

43.     When asked to produce all documents reflecting any policy, practice, or requirement for board or committee approval of milestone-based bonus agreements, Magic Leap produced only Amendment No. 7 to the Note Purchase Agreement and did not produce any signed retention agreement for Plaintiff, any DocuSign document, or any written policy requiring execution of a formal document before a retention plan becomes binding. **Exhibit J:**
**Defendant's Responses to Plaintiff's First Set of Requests for Production of Documents**, Resp Nos. 7, 14, 21.

**RESPONSE: Disputed. Plaintiff misrepresents Defendant's discovery responses, which produce email exchanges and Amendment No. 7 in responses to Requests Nos. 7, 14, 21. Ex. 5, Def's RRPDs.**

44.     Stewart testified that DocuSign documents were generated "once all the approvals are in place." Exhibit B at 27:3-4.

**RESPONSE: Undisputed.**

45.     On November 30, 2022, Stewart emailed Baltazar reporting she had obtained approval from Magic Leap's CEO and CFO for a retention plan for another employee named John Monos and was "working . . . on getting the information in SF and subsequently a document for Monos to sign" within two hours of receiving that approval. Exhibit F at DEF_000089-90; Exhibit C at 38:21–39:22; 45:14-16; Exhibit B at 38:9–39:4.

**RESPONSE: Undisputed.**

46. At the time Stewart began generating Monos's DocuSign, shareholder approval had not been obtained, and Monos had not reviewed the proposal. Exhibit C at 46:1-3; 52:15-16.

**RESPONSE: Disputed. The record does not support that Stewart was generating a DocuSign for Monos.**

47. Monos did not accept the retention proposal and left the company. Exhibit C at 52:20-22.

**RESPONSE: Undisputed.**

48. Magic Leap asserts a second, alternative justification for non-payment: that it was prohibited from paying the bonus because approval of the noteholders was required under Amendment No. 7 to the Note Purchase Agreement. Exhibit I, Resp. Nos. 10, 12, 27, 30, 31, 33, 34.

**RESPONSE: Disputed to the extent this contains legal argument and mischaracterizations of Defendant's legal defenses.**

49. Amendment No. 7 to the Note Purchase Agreement is dated February 1, 2023, nearly seven weeks after the December 16, 2022 email exchange. Exhibit G at DEF_000265-266; Exhibit E at 163:5-164:4.

**RESPONSE: Undisputed.**

50. Magic Leap's corporate designee, Steven McCree Lake, conceded that Amendment No. 7 "didn't exist at the time that offer was—or that discussion existed." McCree Exhibit E at 164:2-5.

**RESPONSE: Undisputed.**

51. Section 8.10 of Amendment No. 7 restricts the use of "Seventh Issuance Note" proceeds for employee bonuses but does not purport to extinguish existing contractual obligations or

prohibit Magic Leap from paying bonuses from other funding sources. Exhibit G at DEF_000266.

**RESPONSE: Disputed as this contention contains legal conclusions. This contention is not supported in full by the cited exhibit.**

52.     McCree Lake confirmed that the December 16, 2022 email chain contained no language indicating the offer was "conditional." Exhibit E at 30:6-31:2.

**RESPONSE: Undisputed.**

53.     McCree Lake confirmed that the email contained no language indicating the bonus was "discretionary", nor did it mention of Amendment No. 7 or "noteholder approval". Exhibit E at 30:14-20.

**RESPONSE: Undisputed.**

54.     Larson-Green, Plaintiff's direct supervisor and the person responsible for the milestones, stated that she and Plaintiff "were both unaware that his retention was conditional on some future retention process." Exhibit F at DEF_000153.

**RESPONSE: Defendant objects to this contention as vague, to the extent "person responsible for the milestones" is subject to more than one meaning. Otherwise, undisputed.**

55.     No one at Magic Leap—not Stewart, not Baltazar, not Bernal—ever communicated to Plaintiff that his retention bonus was discretionary, subject to additional approvals or requirements beyond milestone completion, or required any additional Docusign. Exhibit A, ¶¶ 10-11; Exhibit E at 30:6-31:2; Exhibit B at 107:7-8; Exhibit D at 34:17-22.

**RESPONSE: Disputed. Baltazar testified in his deposition that he told Chu that his retention bonus was subject to additional approval. Ex. F to Def's MISO MSJ, Baltazar Depo. Tr. at 109:10-110:10.**

56.    In its interrogatory responses, Magic Leap asserts that "Plaintiff was aware" of the noteholder approval requirement but identifies no communication, written or oral, in which that requirement was disclosed to Plaintiff. Exhibit H, Resp. No. 5.

**RESPONSE: Disputed. Baltazar testified in his deposition that he told Chu that his retention bonus was subject to additional approval. Ex. F to Def's MISO MSJ, Baltazar Depo. Tr. at 109:10-110:10. Magic Leap's corporate designee also testified that Plaintiff was aware of these requirements. Ex. 1 at 32:4-33:1.**

57.    Magic Leap has never maintained a written policy informing employees that retention plans are subject to noteholder or any other external approval. Exhibit E at 38:17-19; Exhibit C at 28:17-29:2.

**RESPONSE: Disputed. *See* the Amendment No. 7 to the Note Purchase Agreement. Ex. G to Pl's SUMF.**

58.    When asked whether employees were informed about the noteholder approval requirement, Bernal stated, "I don't think we typically advertised that" as "nothing should be offered to an employee without going through that process." Exhibit D at 34:19-20; 30:17-21.

**RESPONSE: Disputed to the extent the testimony snippets are cut and pasted to mislead to Court to fit Plaintiff's false narrative. *See* Ex. D to Pl's SUMF at 30:13-21; 34:1-20.**

59.    McCree Lake testified that the Compensation Committee retains ultimate discretion over retention payouts. Exhibit E at 99:4-7.

**RESPONSE: Undisputed.**

60.    Magic Leap confirmed that before Q4 2022, Magic Leap's compensation procedures were non-uniform and there was no compensation committee. Exhibit E at 220:4-11; Exhibit C at 28:8-11.

**RESPONSE: Disputed as the evidence cited does not support the contention that there was no compensation committee before Q4 2022. Otherwise, undisputed.**

61.    Stewart testified that the annual performance bonus is "completely separate" from a retention plan; that a retention plan is "a direct agreement between the individual and the company that says you must achieve X, Y, Z in order to receive this payment. It's an executed agreement that binds it." Exhibit B at 147:1-148:18.

**RESPONSE: Undisputed.**

62.    McCree Lake agreed with Stewart, stating that the annual bonus and retention plan "are distinct", and that the annual bonus is "discretionary," while a retention plan involves "a specific agreement, details related to how it's going to be assessed, other types of conditions." Exhibit E at 90:16-91:5; 94:11-13.

**RESPONSE: Disputed as Plaintiff's use of piecemeal snippets of deposition testimony is misleading and make it seem as though the quotes were responses to the same line of questioning. They were not. *See* Ex. E to Pl's SUMF.**

63.     McCree Lake conceded that if Plaintiff had completed the formalized milestone process, his acknowledged completion of the milestone would have been a trigger for the $100,000 payment. Exhibit E at 97:15-98:3.

>   **RESPONSE: Disputed. Plaintiff's use of piecemeal snippets of deposition testimony is misleading. The responses of the deponent were actually responding to a hypothetical scenario and is as follows: "Q. Okay. So let me ask the question more simply. Let's just assume, like I said, just for the sake of this question, everything's – all the T's are crossed, I's are dotted. The plan's good. A. Uh-huh. Q. Mr. Chu hits these milestones. A. Uh-huh. Q. He would get the $100,000 for the quarter if he achieve the milestones that – like I said, assuming everything that was in place. He would be offered the – he would get the 100,000, not a different amount. Would that – would that be accurate. A. Yeah. Had everything been in – okay. Had everything been in place as I described earlier, yes, he would have." Ex. E to Pl's SUMF at 97:9-98:3.**

64.     Magic Leap characterized the milestones as "loose", but acknowledged that the milestones had been defined. Exhibit E 203:20-204:2.

>   **RESPONSE: Disputed. The referenced testimony states as follows: "THE WITNESS: My – my contention is just that Mr. Chu never got a formalized agreement in place for whatever reason and, therefore, did not have a structure in which to get paid for these specific loose milestones that were defined." Ex. E to Pl's SUMF 203:19-204:2.**

19

Dated: April 16, 2026                    Respectfully Submitted,

                                         **MAGIC LEAP, INC.**
                                         By Counsel


                                          _/s/ Giovanna R. Bonafede_
                                         Christina M. Heischmidt (DC Bar No. 1006759)
                                         Giovanna R. Bonafede (DC Bar No. 90011443)
                                         WILSON ELSER MOSKOWITZ
                                         EDELMAN & DICKER LLP
                                         8444 Westpark Drive - Suite 510
                                         McLean, Virginia 22102
                                         (703) 245-9300 (phone)
                                         (703) 245-9301 (fax)
                                         Christina.Heischmidt@wilsonelser.com
                                         Giovanna.Bonafede@wilsonelser.com
                                         *Counsel for Defendant Magic Leap, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of April, 2026, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will then send a notification of such filing to the following:

Jeremy C. Huang
ROWE WEINSTEIN & SOHN, PLLC
909 Rose Ave., Suite 640
N. Bethesda, MD 20852
(301) 770-4710 (phone)
(301) 770-4711 (fax)
jhuang@rowepllc.com
*Counsel for Plaintiff David Chu*

*/s/ Giovanna R. Bonafede*
Giovanna R. Bonafede

21