IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID CHU                  *
                                   *
        Plaintiff,           *
                                     *    Case No. 1:25-cv-00574-RCL
vs.                             *
                                     *
MAGIC LEAP, INC.        *
                                     *
        Defendant.        *

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

INTRODUCTION

Defendant Magic Leap's Opposition confirms rather than rebuts Plaintiff's entitlement to summary judgment. Its Statement of Disputed Material Facts acknowledges that the December 16, 2022 e-mail exchange contains no conditional language, no discretionary language, and no reference to Amendment No. 7 or noteholder approval. SDMF ¶¶ 52-53. That concession is significant, but Magic Leap nonetheless maintains that no contract was formed, arguing that the December 16 e-mail was clearly "just" an invitation to collaborate, and that Plaintiff "should have known" the exchange was not final regardless of what it said on its face, with the latter argument advanced, necessarily, without a single citation to any Virginia jurisprudence.

Despite Magic Leap's current characterization of this e-mail, both Plaintiff and Julie Larson-Green, Magic Leap's Chief Technology Officer, read the December 16 exchange as an offer that Plaintiff accepted, with the latter commenting that she and Plaintiff "were both unaware that his retention was conditional on some future retention process." SDMF ¶ 54. If Magic Leap's CTO understood the December 16 exchange to be a final, binding agreement,

Magic Leap cannot credibly maintain it would have been reasonable for her subordinate, or any other reasonable person standing in his shoes, to read it differently.

Magic Leap further argues that even if this Court finds a valid contract was formed, its decision not to pay was a "bona fide dispute" over whether payment was owed. This is a transparent and meritless attempt to escape the enhanced fee award available under Va. Code § 40.1-29(J), as the contemporaneous record is replete with statements from Magic Leap personnel acknowledging that the retention payment for Q1 2023 was owed and that the only reason for nonpayment was the subsequent refusal of Magic Leap's controlling investor, the Public Investment Fund of Saudi Arabia ("PIF"), to fund Chu's retention plan. Such refusal does not constitute a good-faith dispute over whether Magic Leap promised these wages to Chu at the outset.

As the undisputed record establishes that Magic Leap formed a binding agreement on December 16, 2022, and that its subsequent refusal to pay was driven not by any good-faith dispute, the Court should grant Plaintiff's Motion for Summary Judgment.

ARGUMENT

**A.     The December 16, 2022 E-mail Was a Binding Offer, Not an "Invitation to Collaborate."**

Magic Leap's characterization of the December 16 e-mail from Victoria Stewart as "clearly 'just' an invitation to collaborate" rather than a binding offer (Def. Opp. at 4) falls apart for three independent reasons: (1) its own Rule 30(b)(6) witness testified that the e-mail's text contains no language indicating the proposal was conditional, discretionary, or subject to further approval; (2) Jose Baltazar, Magic Leap's Chief Human Resources Officer at the time, and the architect of the retention plan, testified that a structurally identical December 1 e-mail would

have produced a binding agreement had Plaintiff accepted it; and (3) its current contention that the December 16 milestones were too vague is contradicted by the parties' own December 1 milestone exchange and Magic Leap's verified admission that Plaintiff completed the Q1 2023 milestone.

1.      *The December 16 E-mail Is an Unqualified Offer on Its Face.*

In *Dulany Foods, Inc. v. Ayers*, 220 Va. 502, 508–09 (1979), the Virginia Supreme Court held that a company-wide memorandum establishing severance pay guidelines constituted a binding offer where the terms identified the eligible employees, specified the payment structure, and defined the conditions of payment. The employer in *Dulany* argued, as Magic Leap does here, that its communication was "merely voluntary promises of a gratuity, revocable at will." *Id.* at 506. The court rejected that characterization, holding that the memorandum's terms were "clear, definite, and unambiguous" and that the employees' continued service constituted acceptance. *Id.* at 508. The December 16 email in the instant case is more concrete than the memorandum in *Dulany* in every respect in that it 1) identifies a specific employee rather than a class, 2) specifies an exact dollar amount rather than a formula, 3) establishes a quarterly payment schedule rather than a general timeline, and 4) ties payment to defined milestones rather than to continued employment alone; as such, if the memorandum in *Dulany* constituted a binding offer, the December 16 email from Stewart does as well. Yet despite the clear terms outlined in the e-mail, Magic Leap asks this Court to read ambiguity into it that its own 30(b)(6) corporate designee could not find ambiguity in.

Steven McCree Lake's deposition testimony reflected a sustained effort to characterize the December 16 email as a nonbinding "proposal" (Pl. Ex. E, McCree Lake Dep. (ECF No. 20-6) at 26:6–9), but when directed to the text itself, he conceded the email contains no language

that would support this characterization. *Id.* at 30:6–31:2; SDMF ¶¶ 52–53 (Undisputed). Importantly, he did not identify the word "feedback" or any other term in the email as signaling the proposal was preliminary, but instead grounded his assertion on separate internal processes that are never mentioned in the document.

The December 16 email exchange, moreover, was not a cold proposal which would have required the negotiation on terms that Magic Leap suggests. Two weeks earlier, on December 1, Larson-Green had agreed to Chu's proposed milestones and forwarded the compensation table from Victoria Stewart showing a $400,000 quarterly retention plan with specific dollar amounts tied to these milestones. SUMF ¶¶ 14–15; Compl. Ex. C (ECF No. 1-5) at 1. In response, Chu only rejected the $400,000 figure ("pretty far from expectations") and Stewart's December 16 e-mail served to address Chu's concern.

Magic Leap places significant weight on Stewart's use of the word "feedback" as evidence that the December 16 email was merely an invitation to negotiate, but the prior December 1 proposal to Chu with the $400,000 figure used functionally identical language requesting a response ("let me know what you think"), and Baltazar, who had originated the retention plan and to whom Stewart reported, conceded that this communication would have produced a binding agreement had Chu accepted it. Pl. Ex. C, Baltazar Dep. (ECF No. 20-4) at 60:12–16. Magic Leap cannot maintain that these two phrases have radically different implications when the only difference in the latter correspondence is the compensation figure. Accordingly, it is clear that Stewart's request for "feedback" was a request for acceptance or rejection of revised figures in a compensation table Chu had already seen in an earlier form, not an invitation to begin a conversation about whether to proceed at all.

Additionally, Magic Leap's own employees, including the author of the "feedback" e-mail herself, never treated the December 16 exchange as a mere proposal prior to this litigation. On January 21, 2023, Stewart reached out to Baltazar, Larson-Green, and Baltazar's incoming successor Sheri Bernal, writing: "as a reminder, we had agreed to a $600,000 retention for David Chu." Pl. Ex. E, McCree Lake Dep. at 36:3–7. As mentioned previously, Larson-Green, Chu's direct supervisor and the person responsible for defining the milestones, later confirmed she "was unaware that his retention was conditional on some future retention process." SDMF ¶ 54. This is unsurprising, since there was no subsequent communication from anyone at Magic Leap continuing the discussion in any form, or even an acknowledgment that further steps were required; by all appearances, the negotiation Magic Leap now says was just beginning had already ended.

*II. The Milestones Were Sufficiently Definite, and Performance Cured Any Arguable Vagueness.*

As previously stated, through written discovery Defendant never contended that the milestones described in the December 1 email were preliminary or indefinite, and in fact admitted that Chu completed the performance milestone for Q1 2023. Pl. Ex. H, Interrog. Resp. (ECF No. 20-9) No. 7. The vagueness argument surfaced for the first time during depositions and has since been elevated in Magic Leap's opposition to the claim that "no milestones had been specified by Larson-Green" (Def. SUMF ¶ 20), a contention difficult to square with its own verified admission that Chu achieved those very milestones.

Magic Leap's accusation that Plaintiff put forth "misleading snips of Stewart's deposition transcript" is quite rich, given that its Opposition selectively quotes from Stewart's January 21, 2023 e-mail, including Stewart's statement that Larson-Green needed to assign specific

milestones (Exhibit K to Def. Motion for Summary Judgment (ECF No. 19-11)) and Larson-Green's statement that she had not yet set up a way to track them, while omitting Larson-Green's explicit confirmation—which lies between the two quotes above—that she had already assigned the milestones. Def. Opp. at 5 (citing Pl. Ex. B, Stewart Dep. (ECF No. 20-3) at 62:2–4, 63:6–8, 63:12–20).

Regardless, whether Larson-Green created a formalized process to monitor progress is irrelevant to whether she and Chu understood what needed to be accomplished to earn the bonus payments, particularly when both Stewart and McCree Lake confirmed that Larson-Green was the sole person designated to define and evaluate the milestones. (Pl. Ex. E, McCree Lake Dep. at 28:6–9, 49:5–10; Pl. Ex. B, Stewart Dep. at 25:8–26:2). Larson-Green's confirmation that Chu completed the milestone entitling him to payment of the retention bonus for Q1 2023 further underscores that the milestones were understood and agreed upon; otherwise she could not have evaluated Chu's performance against them. SUMF ¶ 14.

Even if this Court were to agree with Magic Leap's contention that the December 1, 2022 milestones were not sufficiently defined, Virginia law "does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency." *High Knob, Inc. v. Allen*, 205 Va. 503, 507 (1964). Courts will not "permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances." *Id*. This is "especially true where there has been partial performance", as is undisputed here. *Id.* Further, a party that has received the benefit of a completed milestone and admitted under oath that the milestone was achieved cannot credibly maintain that the milestones were too vague to enforce.

**B.      Magic Leap's "Should Have Known" Theory Is Not a Recognized Defense Under Virginia Contract Law.**

Magic Leap's fallback position is that even if this Court were to determine that the text of the December 16 email otherwise appears to be an offer, Chu "should have known" from his seniority and his prior experience with his initial offer letter from 2021 that additional formalization steps were still required before any compensation agreement could become binding. Def. Opp. at 14. Because Magic Leap does not identify the doctrinal basis for its argument, Plaintiff addresses the two doctrines under which it could conceivably proceed: lack of mutual assent under the objective theory and an established course of dealing that imported additional terms by implication. However, neither defense is applicable here, because both apply only where the terms of the agreement are ambiguous.

Before exploring these concepts further, however, a threshold problem deserves mention: Magic Leap cannot itself identify with any consistency what Chu was supposedly required to know. Through verified discovery responses, Magic Leap repeatedly identified noteholder approval under Amendment No. 7 as the basis for non-payment. *See, e.g.*, Pl. Ex. I, RFA Resp. (ECF No. 20-10) No. 15 ("It was approval of the noteholders under Amendment No. 7 to the Note Purchase Agreement that was required to pay Mr. Chu's discretionary bonus."); Pl. Ex. I, RFA Resp. No. 10 (same). In the same set of responses, Magic Leap affirmatively admitted that "board-level approval was not required for individual milestone-based bonuses" (Pl. Ex. I, RFA Resp. No. 31) and that there was "no written policy requiring board approval for milestone-based bonus agreements" (Pl. Ex. I, RFA Resp. No. 33). Magic Leap's Opposition now reverses both positions by asserting that Chu "knew or should have known that any retention bonus plan akin to his required the approval of the Board of Directors" (Def. Opp. at 1), and disclaims

Amendment No. 7 as a defense entirely ("Defendant is not arguing that Amendment No. 7 to the Note Purchase Agreement applies to Chu's potential bonus plan.") Def. Opp. at 6 n.2. The unapologetic transition from noteholder approval to board approval (neither of which was ever communicated to Chu as a prerequisite for the retention plan to move forward, and the latter of which Magic Leap admitted in discovery was not required) illustrates the post-hoc nature of the defense. With this inconsistency in view, the Court can address each candidate doctrine in turn.

1. *Magic Leap Cannot Establish a Lack of Mutual Assent Under the Objective Theory.*

Magic Leap's assertion that Chu "should have known" that the December 16 e-mail exchange was subject to additional steps appears to be a claim that there was no "meeting of the minds", despite the otherwise clear written agreement reflected in the document. Unfortunately for Magic Leap, Virginia follows the objective theory of contract formation which "ascertain[s] whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." *Phillips v. Mazyck*, 273 Va. 630, 636 (2007). The law "judges of an agreement between two persons exclusively from those expressions of their intentions which are communicated between them." *Id.* (*quoting Lucy v. Zehmer*, 196 Va. 493, 503 (1954)) (emphasis in original). Whatever Magic Leap subjectively understood about its own internal processes is legally irrelevant as the determinative question is what a reasonable person in Chu's position would have understood after reading the December 16, 2022 e-mail exchange.

On that question, Magic Leap has offered no evidence beyond the unsubstantiated proclamations of its own current and former employees that Chu, as a senior leader, either knew or should have known that the December 16, 2022 retention plan needed additional approvals. (Pl. Ex. E, McCree Lake Dep. at 31:22–33:1; Pl. Ex. B, Stewart Dep. at 148:6, 26:8; Pl. Ex. L,

Baltazar Dep. (Add'l Excerpts) (ECF No. 24-2) at 114:1–22). None of this testimony is supported by any contemporaneous document, written policy, or communication memorialized in the record. When asked to produce all documents reflecting any approval requirement allegedly necessary before milestone payments could be made to Chu, Magic Leap produced no written policy, no employee handbook provision, and no HR procedure document. Pl. Ex. J, RPD Resp. (ECF No. 20-11) No. 7. Further, Magic Leap admitted that "there was no written policy requiring board approval for milestone-based bonus agreements" (Pl. Ex. I, RFA Resp. No. 33), and when asked to identify whether the approval requirement was ever communicated to Chu, and if so by whom and when, Magic Leap identified no communication. Pl. Ex. H, Interrog. Resp. No. 5. Finally, Bernal, Baltazar's immediate successor as Magic Leap's CHRO, testified that approval requirements were not "typically advertised" to employees. Pl. Ex. D, Bernal Dep. (ECF No. 20-5) at 34:19–20.

Under *Phillips* and *Lucy*, Magic Leap's purported uncommunicated internal approval processes cannot defeat the unambiguous text of the agreement Chu accepted on December 16, regardless of what Magic Leap's witnesses now testify they privately believed those processes required.

> 2.    *Magic Leap Cannot Establish a Course of Dealing That Imported Additional Terms Into the December 16 Agreement.*

If Magic Leap's "should have known" argument does not sound in meeting of the minds, the only other recognized doctrine that could conceivably support it is "course of dealing". Although Magic Leap does not identify the doctrine by name, its reliance on testimony about Magic Leap's "prevailing practice" that other retention plans were formalized through DocuSign agreements with countersignatures (Pl. Ex. E, McCree Lake Dep. at 29:5–30:5) appears to

invoke course of dealing as a basis for importing additional terms into the December 16 agreement by implication. The argument fails on three independent grounds.

First, course of dealing is a doctrine of contract interpretation and modification, not formation: it addresses how parties understood or modified an existing agreement based on "a sequence of conduct concerning previous transactions between the parties." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73 (1983). The doctrine has never been applied in Virginia to defeat the formation of a contract whose text is otherwise complete, and Magic Leap cites no case for that proposition.

Second, course of dealing under Virginia law requires "a sequence of conduct concerning previous transactions between the parties." *Id.* The only prior compensation transaction between Chu and Magic Leap was his initial offer letter which involved only a single transaction, not a repeated sequence of events. Magic Leap's testimony about how it handled retention plans for other employees is legally irrelevant as those transactions were not between the parties here, and how those transactions were structured was never conveyed to Chu. Pl. Ex. E, McCree Lake Dep. at 30:6–31:2; Pl. Ex. D, Bernal Dep. at 34:19–20. A course of dealing cannot be built from transactions an employee never knew about.

Third, even setting aside the absence of a sequence of prior dealings, Chu's one prior compensation transaction does not establish what Magic Leap claims. Stewart testified that DocuSign documents were generated "once all the approvals are in place", meaning after the underlying terms were agreed and the offer was able to be accepted by the employee. Pl. Ex. B, Stewart Dep. at 27:3–4. The Monos comparator confirms this sequence: Stewart began generating Monos's DocuSign before shareholder approval had been obtained and before Monos had even reviewed the proposal. SUMF ¶ 46. Magic Leap's own practice was to generate

DocuSign documents to memorialize agreements that were already in substance complete and not as a condition precedent to their formation. Magic Leap's argument is, at bottom, an attempt to use one prior transaction in which formalization followed acceptance to argue that formalization must precede acceptance in all future transactions. Virginia law does not permit that inversion. Stanley's Cafeteria, which required clear and convincing evidence of mutual intent to modify a contract even after eighteen years of consistent conduct between the parties, confirms that the bar is far higher than what Magic Leap has shown here.

3.      *Regardless of the Doctrinal Framing, the Parol Evidence Rule Forecloses Magic Leap's Attempt to Vary the Plain Text of the December 16 Agreement.*

Each of Magic Leap's arguments shares a common defect: they all seek to use extrinsic evidence, such as testimony about Magic Leap's internal processes, prevailing practices, and what Chu allegedly "should have known", to attempt to muddy the waters regarding the text of the December 16 email. The parol evidence rule forbids this approach regardless of how Magic Leap labels it.

Under Virginia law, extrinsic evidence "may not vary the plain language" of an unambiguous contract. *Worsham v. Worsham*, 74 Va. App. 151, 165–66 (2022) (*citing Utsch v. Utsch*, 266 Va. 124, 130 (2003)). Additionally, "[p]arol evidence may not be used to first create an ambiguity and then to remove it." *Doswell Ltd. P'ship v. Virginia Elec. & Power Co.*, 251 Va. 215, 223 (1996). Further, "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Harris v. Woodrum*, 3 Va. App. 428, 432 (1986). Finally, a term is ambiguous only when it produces "two competing interpretations that are equally possible" when read in context.

*Worsham*, 74 Va. App. at 168. The mere ability of a party to "hypothesize 'opposing interpretations' of the same contractual provision" does not create ambiguity. *Id*.

As has been demonstrated *ad nauseam*, the December 16 email is unambiguous, and Magic Leap has not identified any term in the December 16 email that produces two equally possible interpretations. Its testimony about internal processes, prior practices, and Chu's supposed inferred knowledge is not being offered to interpret an ambiguous term, but rather to contradict an unambiguous one in contravention of the parol evidence rule, which prohibits the introduction of such evidence.

Whether Magic Leap grounds its argument that Chu "should have known" as a "lack of meeting of the minds", "course of dealing", or something else, the end goal is the same: to read into the December 16 email conditions that its plain text does not contain, and the Virginia caselaw is clear in forbidding this result.

## C.    Magic Leap's Bona Fide Dispute Defense Cannot Be Reconciled With Its Own Admissions.

Magic Leap's last line of defense, raised in the event the Court finds a binding agreement was formed, is that any wrongful withholding was the product of a "bona fide dispute" precluding treble damages under Va. Code § 40.1-29(J). The argument fails because Magic Leap relies on cases that do not support its theory, and the contemporaneous record establishes that Magic Leap's own employees understood the wages were owed.

On the law, Magic Leap's Opposition largely repeats the bona fide dispute argument it advanced in its Motion for Summary Judgment. *Compare* Def. MSJ at 16-17 with Def. Opp. at 10-11. As Plaintiff explained in his Opposition, two of the cases that Defendant continues to cite,

*Davenport v. HirePower Pers., Inc.*, No. 5:22-cv-074, 2024 U.S. Dist. LEXIS 71873 (W.D. Va. Apr. 19, 2024), and *Racklin v. Zeta Global Corp.*, 628 F. Supp. 3d 625 (E.D. Va. 2022) invoke "bona fide dispute" in the context of the criminal safe harbor of § 40.1-29(E), not the civil damages framework under § 40.1-29(J). Pl. Opp. at 11-12 & n.2. Accordingly, neither case analyzes how a bona fide dispute bears on the "knowingly" standard that governs the treble damages context in which the defense is relevant here.

The only Virginia decision Magic Leap cites that addresses the knowing standard is *Muratore v. Foster Aesthetics, L.L.C.*, 113 Va. Cir. 414, 427 (Chesapeake 2024), which stands for the narrow proposition that an employer's contemporaneous, good-faith interpretation of genuinely ambiguous contract terms may negate the "knowing" element.

In *Muratore*, the payment dispute centered on the defendant employer's contemporaneous reading of two documents that were arguably in tension regarding the rate of pay for the plaintiff employee: an employment contract setting an hourly rate, and an employee manual providing a reduced rate for training hours. *Id.* at 422, 427. Ultimately, the *Muratore* court held that the employer's reading was wrong, but plausible enough that the wrongful withholding was not "knowing." *Id.* at 427.

In the instant case, the December 16 agreement was not ambiguous, and the contemporaneous record establishes that Magic Leap's own employees understood that Chu was owed payment for Q1 2023. As noted above, Stewart, the author of the December 16 email Magic Leap now characterizes as a mere "proposal", wrote internally on January 21, 2023 that "we had agreed to a $600,000 retention for David Chu." Pl. Ex. E, McCree Lake Dep. at 36:3–7. Larson-Green, who was in Magic Leap's C-suite, stated that she and Chu "were both unaware that his retention was conditional on some future retention process." SDMF ¶ 54. She further

characterized Magic Leap's pattern of failing to honor retention bonus commitments (Chu's included) as a "charade". Pl. Ex. F (ECF No. 20-7) at DEF_000208. Bernal admitted the "only reason" for non-payment was the PIF's refusal to fund the bonus. Def. Ex. L (ECF No. 19-12) at DEF_000157. All of these statements evidence an internal recognition that the wages were owed to Chu, but Magic Leap was handcuffed by an external funding constraint that arose after the agreement was formed.

The bona fide dispute defense protects employers who make good-faith but ultimately incorrect contemporaneous legal judgments about what their employment agreements require. It does not, however, protect employers who are unable to pay for any other reason.

CONCLUSION

For the foregoing reasons, and those set forth in Plaintiff's Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, Plaintiff David Chu respectfully requests that this Court grant his Motion for Summary Judgment as to liability on Counts I and II, find that Magic Leap violated the Virginia Wage Payment Act, or in the alternative breached its December 16, 2022 contract, and award such further relief as the Court deems just and proper.

<div style="margin-left: 45%">

Respectfully submitted,

ROWE WEINSTEIN & SOHN, PLLC

*/s/ Jeremy C. Huang*
Jeremy C. Huang (D.C. Bar No. 1000849)
909 Rose Avenue, Suite 640
North Bethesda, MD 20852
Telephone: (301) 761-3837
jhuang@rowepllc.com
*Attorney for Plaintiff David Chu*

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of May 2026, a copy of the foregoing Plaintiff's Reply in Further Support of Summary Judgment was served via the Court's ECF system upon the following persons:

Christina M. Heischmidt (DC Bar No. 1006759)
Giovanna R. Bonafede (DC Bar No. 90011443)
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP
8444 Westpark Drive - Suite 510
McLean, Virginia 22102
*Attorneys for Defendant Magic Leap, Inc.*

/s/ Jeremy C. Huang